# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Solorio v. Rodriguez*, 2013 IL App (1st) 121282

---

| | |
|---|---|
| Appellate Court Caption | JAMES SOLORIO, JR., Individually as Father and Next Friend of James Solorio III, a Minor, Plaintiffs-Appellants, v. ANTHONY RODRIGUEZ, ZAHAN SHATAT, and STANDARD BANK & TRUST COMPANY, as Successor Trustee to East Side Bank and Trust Company under Trust No. 1469, Defendants-Appellees. |
| District & No. | First District, Fifth Division<br>Docket No. 1-12-1282 |
| Filed | March 22, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action arising from an incident in which plaintiff's son was bitten by a dog that belonged to the tenant who leased the residence next door to plaintiff's home, the counts alleging private nuisance and negligence against the trustee and the landlord of the property where the dog's owner lived were properly dismissed, even assuming the dog escaped through a gate defendant landlord failed to repair, since the circumstances did not amount to a substantial, unreasonable invasion of plaintiff's land, plaintiff did not establish that defendant landlord knew of the broken gate and did not take reasonable steps to repair it, and the landlord's duty to protect third parties from injury caused by a tenant's pet would not be extended to injuries occurring away from the rented premises. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-L-003486; the Hon. Jeffery Lawrence, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Edward J. Moran, of Law Offices of Edward J. Moran, of Chicago, for
appellants.

Tara A. Ryniec of Leahy, Eisenberg & Fraenkel, Ltd., of Chicago, for
appellees Zahan Shatat and Standard Bank & Trust Company.

Panel

PRESIDING JUSTICE McBRIDE delivered the judgment of the court,
with opinion.

Justices Howse and Palmer concurred in the judgment and opinion.

## OPINION

¶ 1    Plaintiffs James Solorio, Jr., and his son, James Solorio III appeal from the trial court's dismissal of counts IV and V of their first amended complaint, pursuant to section 2-619(a)(9) of the Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(9) (West 2010)). On appeal, plaintiffs contend that the trial court erred in dismissing counts IV and V of their complaint because they properly stated a cause of action for both private nuisance and negligence. We affirm.

¶ 2    This appeal is based on an incident that occurred on March 10, 2010, in which James Solorio III was bitten "several times" by a pit bull while he was sitting on the front steps of his home, located at 10841 South Avenue O in Chicago. The pit bull belonged to Anthony Rodriguez. At the time of the incident, Rodriguez was leasing and occupying the premises located next door to the Solorio home, 10843 South Avenue O (Premises). The Premises were held in trust by Standard Bank & Trust Company (Standard Bank) as successor trustee to East Side Bank and Trust Company, under trust No. 1469, for the benefit of Zahan Shatat, who was also the landlord of the Premises.

¶ 3    On October 8, 2010, plaintiffs filed their first amended complaint against Rodriguez, who is not a party to this appeal, and Shatat and Standard Bank (defendants). In counts I, II, and III of the complaint, plaintiffs alleged claims against Rodriguez, under theories of strict liability, negligence, and statutory liability pursuant to the Animal Control Act (510 ILCS 5/1 *et seq*. (West 2010)). The counts against Rodriguez are still pending but are currently stayed pending this appeal.

¶ 4    Counts IV and V were alleged against Shatat and Standard Bank. In count IV, a claim of private nuisance, plaintiffs alleged that defendants "unreasonably interfered" with plaintiffs' use and enjoyment of their property, "by allowing a vicious dog to be harbored at the Premises with a broken fence gate that was unable to contain the dog." They further alleged that defendants had "substantially and unreasonably invaded" plaintiffs' property by allowing the dog to escape the Premises. In count V, a claim of negligence, plaintiffs alleged that Shatat knew Rodriguez was keeping a "vicious and dangerous dog" on the Premises because

he knew the dog was "tearing up the basement" and that Shatat was negligent for failing to maintain the gate through which the dog escaped.

¶ 5     On October 29, 2010, defendant Shatat filed a memorandum of law in support of his motion to dismiss counts IV and V of plaintiffs' first amended complaint, pursuant to section 2-619 of the Code.[1] In it, Shatat argued that plaintiffs failed to allege facts showing that he engaged in anything that constituted a "private nuisance" and that he owed plaintiffs no duty that would give rise to a negligence action because he did not control or own the dog. In support, Shatat attached his own affidavit, in which he averred that he entered into a "Residential Tenancy Agreement" with Rodriguez, effective on March 10, 2010, that provided, "no pets or animals are allowed to be kept in or about the premises." He also averred that he, "at no time, ever owned, kept, cared for, had custody of, maintained, or controlled the pit bull dog" at the Premises. Also attached to the motion was the "Residential Tenancy Agreement," dated March 10, 2010, and signed by Shatat and Rodriguez. Paragraph 4 of the agreement states, "No pets or animals are allowed to be kept in or about the Premises."

¶ 6     In his discovery deposition taken on December 2, 2011, Shatat testified that he did not recall having a conversation with Rodriguez at the Premises in January 2010 in the presence of James Solorio, Jr. Shatat did not see the dog on the Premises before the incident occurred on March 10, 2010. On March 10, 2010, Shatat and Rodriguez signed a lease for the Premises. Rodriguez had been renting the Premises for "over four years." Shatat identified a copy of the lease agreement and testified that at the time of signing he had discussed the provision prohibiting pets or animals being kept at the Premises. Shatat was not aware that Rodriguez had a dog on the property at the time. Later in the deposition, Shatat testified that he signed the lease with Rodriguez on or after March 11, 2010. After the lease was signed, Shatat inspected the Premises and found them to be in "[g]ood condition." After Shatat heard about the incident, he went to the Premises and told Rodriguez to remove the dog. Prior to March 10, 2010, Shatat never saw the gate in a broken condition. Shatat had the authority to repair the gate and would have if he had known it was broken.

¶ 7     On November 21, 2011, plaintiffs filed a response to defendants' motion to dismiss. In an attached affidavit, James Solorio, Jr., averred that in January 2010, he was present at the Premises and heard Shatat tell Rodriguez to remove the dog from the Premises because it was "tearing up the basement."

¶ 8     On December 20, 2011, the trial court dismissed counts IV and V of plaintiffs' first amended complaint with prejudice as to each defendant. After hearing oral arguments on March 29, 2012, the trial court denied plaintiffs' motion to reconsider, explaining that it did not believe there was reason for Shatat to anticipate a broken gate would lead to an injury. In response to plaintiffs' argument that Shatat should have known the dog was dangerous because the dog had torn up the basement, the court said, "chewing up the basement is not the same thing as escaping and chewing up a neighbor." Plaintiffs filed a notice of appeal from the court's order on April 27, 2012.

---

[1]The actual motion to dismiss does not appear in the record on appeal.

¶ 9     On appeal, plaintiffs first contend that the trial court erred in dismissing count IV of their complaint, the private nuisance claim. Specifically, plaintiffs argue that Shatat knowingly allowed Rodriguez to harbor a dangerous dog on the Premises and failed to repair the gate through which the dog escaped, causing "a substantial annoyance to the plaintiffs going far beyond offending any 'special sensitivities' that the plaintiffs had."

¶ 10    Section 2-619(a)(9) of the Code provides that an action may be dismissed when "the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a)(9) (West 2010). A court ruling on a section 2-619 motion must " 'interpret all pleadings and supporting documents in the light most favorable to the nonmoving party.' " *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 367-68 (2003) (quoting *In re Chicago Flood Litigation*, 176 Ill. 2d 179, 189 (1997)). However, conclusions of law or fact unsupported by specific factual allegations should not be taken as true. *Buckner v. O'Brien*, 287 Ill. App. 3d 173, 176 (1997), *aff'd*, 182 Ill. 2d 12 (1998). The trial court's decision to grant a motion to dismiss pursuant to section 2-619(a)(9) is reviewed *de novo*. *Van Meter*, 207 Ill. 2d at 368.

¶ 11    A private nuisance is a "substantial invasion of another's interest in the use and enjoyment of his or her land." *In re Chicago Flood Litigation*, 176 Ill. 2d at 204. The invasion must be substantial, unreasonable, and either intentional or negligent. *Id*. Moreover, a private nuisance "must be physically offensive to the senses to the extent that it makes life uncomfortable." *Dobbs v. Wiggins*, 401 Ill. App. 3d 367, 375-76 (2010) (citing *In re Chicago Flood Litigation*, 176 Ill. 2d at 205-06).

¶ 12    For example, in *Dobbs*, after a two-day bench trial, the trial court concluded that the presence of 69 barking dogs being kenneled on a neighboring plot of land constituted a private nuisance. *Dobbs*, 401 Ill. App. 3d at 370, 375. At trial, one of the plaintiffs had testified that "the barking was constant, day and night" and "there was never any extended period of time in which they completely quit barking." *Id*. at 369. The constant barking could be heard inside, and prevented him from spending time outside and enjoying his property. *Id*. The reviewing court affirmed the trial court's finding that the dogs constituted a private nuisance. *Id.* at 379.

¶ 13    In so holding, the *Dobbs* court discussed *Woods v. Khan*, 95 Ill. App. 3d 1087, 1088 (1981). In *Woods*, the defendants kept 50,000 chickens in a barn on their property and the plaintiffs testified that "[f]owl odors permeated the neighborhood" and brought flies. *Woods*, 95 Ill. App. 3d at 1089. The odor and the flies caused the plaintiffs to curtail their outdoor activities and to experience physical ailments, including breathing difficulties, sore throats, and feelings of nausea. *Id*. The reviewing court found "the trial court properly determined that the odors and flies were sufficiently bothersome to justify injunctive relief." *Id*. at 1090.

¶ 14    Here, plaintiffs argue that the single incident of the dog escaping from the Premises due to a broken gate is sufficient to constitute a private nuisance. Although plaintiffs cite case law for the general principles of private nuisance law (see *Pasulka v. Koob*, 170 Ill. App. 3d 191 (1988); *Colwell Systems, Inc. v. Henson*, 117 Ill. App. 3d 113 (1983)), plaintiffs cite no case law to support their specific argument. See Ill. S. Ct. R. 341(h)(7) (eff. July 1, 2008) (brief "shall contain the contentions of the appellant and the reasons therefor, with citation

of the authorities *** relied on"). Notably, plaintiffs do not present any evidence to suggest that the dog being kept on the Premises prevented or impaired the use or enjoyment of their property. Rather, plaintiffs' brief contains generalizations without explanation or factual support: "by allowing a vicious dog at his property with a broken gate, [Shatat] endangered the people of the neighborhood, including Plaintiffs, which ultimately resulted in the attack which is the focus of this lawsuit." Even assuming all plaintiffs' allegations are true, including that Shatat failed to maintain the gate, that Rodriguez's dog escaped through the broken gate and bit James Solorio III and that James Solorio, Jr., heard Shatat tell Rodriguez to remove his dog from the Premises because it was "tearing up the basement," these facts do not, as a matter of law, amount to a substantial, unreasonable invasion of plaintiffs' land. See *In re Chicago Flood Litigation*, 176 Ill. 2d at 204; see also *Dobbs*, 401 Ill. App. 3d at 377; *Woods*, 95 Ill. App. 3d at 1090. We find that the trial court properly dismissed count IV of the first amended complaint, plaintiffs' private nuisance claim.

¶ 15    Plaintiffs next assert that the trial court erred in dismissing count V, their claim of negligence. Specifically, plaintiffs claim that defendants owed a duty to plaintiffs to prevent the dog which Shatat knew to be dangerous from escaping and attacking someone and breached that duty when the dog escaped through the broken gate and attacked James Solorio III.

¶ 16    As an initial matter, we find plaintiffs have waived their argument that defendants owed plaintiffs a duty to repair the broken gate on the Premises. Plaintiffs claim they presented evidence that Shatat knew the dog was likely to escape "because of the existence of a premises defect, specifically, the broken fence gate, that was unable to contain the dog on the property" and therefore the trial court erred in dismissing their negligence claim. In support of this argument, plaintiffs cite to section 364 of the Restatement (Second) of Torts (hereinafter Restatement), which provides:

"A possessor of land is subject to liability to others outside of the land for physical harm caused by a structure or other artificial condition on the land, which the possessor realizes or should realize will involve an unreasonable risk of such harm, if

(a) the possessor has created the condition, or

(b) the condition is created by a third person with the possessor's consent or acquiescence while the land is in his possession, or

(c) the condition is created by a third person without the possessor's consent or acquiescence, but reasonable care is not taken to make the condition safe after the possessor knows or should know of it." Restatement (Second) of Torts § 364 (1965).

Plaintiffs then conclude that "[the broken fence gate is such a structure or artificial condition as contemplated" in the Restatement. First, we disagree with plaintiffs' interpretation of the cited Restatement section. The section specifically refers to "physical harm caused by a structure or artificial condition" and in the present case the injury was caused by the dog, not by the condition, the broken gate. In addition, although plaintiffs do not cite to a specific subsection of section 364, both subsections (a) and (b) are inapplicable because there is no suggestion or evidence that defendants created the broken gate or acquiesced to its creation. Likewise, subsection (c) does not support plaintiffs' contention because it requires that the

possessor "knows or should know" of the condition and plaintiffs have failed to show either. Subsection (c) also requires that the possessor did not take reasonable care to fix the condition once he knew of it. The only evidence of the broken gate plaintiffs presented was a photograph taken at an unspecified time and they failed to present evidence of when the gate became broken. Plaintiffs also did not present evidence to show if or when defendants knew of the broken gate or evidence that would suggest defendants did not take reasonable care to fix the broken gate. In fact, in his deposition Shatat denied knowing the gate was broken before the incident and said he would have fixed the gate if he had known of its condition. Therefore, the Restatement does not support plaintiffs' contentions.

¶ 17    Moreover, plaintiffs offer no case law to support their argument and fail to provide any further reasoning as to why the broken gate is a condition contemplated by the Restatement. Supreme Court Rule 341(h)(7) requires that the appellant's brief "contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on." Ill. S. Ct. R. 341(h)(7) (eff. July 1, 2008). Plaintiffs' reliance upon only the Restatement and lack of reasoned argument is insufficient to meet the requirements of the rule and this argument is therefore forfeited. *Vincent v. Debert*, 183 Ill. App. 3d 1081, 1087 (1989) (noting that "a reviewing court is entitled to have issues clearly defined with pertinent authority cited and cohesive legal arguments presented [citation] and issues not sufficiently presented can be waived [citation]").

¶ 18    Forfeiture aside, we do not agree with plaintiffs' interpretation of the issue. We frame the second issue on appeal as follows: whether a landlord owes a duty to protect third parties from injury inflicted by the tenant's dog when that injury occurs away from the leased premises.

¶ 19    In Illinois, absent evidence of a dog's vicious propensities, the dog is presumed to be tame, docile, and harmless. *Goennenwein v. Rasof*, 296 Ill. App. 3d 650, 654 (1998) (citing *Lucas v. Kriska*, 168 Ill. App. 3d 317, 320 (1988)). Therefore, in a negligence action based on a dog-biting incident, to show the defendant owed a duty to the plaintiff, the plaintiff needs to show that the defendant knew or had reason to know the dog would be dangerous to children. *Id*. Where the trial court has determined that a defendant owes no duty to the plaintiff, the court's dismissal of the complaint pursuant to section 2-619 is proper. *Lang v. Silva*, 306 Ill. App. 3d 960, 970 (1999); *Milz v. M.J. Meadows, Inc.*, 234 Ill. App. 3d 281, 287 (1992). Whether a duty exists is a question of law to be determined by the court. *Klitzka v. Hellios*, 348 Ill. App. 3d 594, 596 (2004).

¶ 20    We have been unable to find an Illinois case in which a plaintiff brought a negligence suit against a landlord as the result of an injury inflicted by a tenant's dog when the injury occurred away from the premises. However, we find instruction from *Klitzka*, a case not cited by the parties. In *Klitzka*, the plaintiff, Alexus, lived with her parents next door to Mark and Amanda Hellios. Mark and Amanda (tenants) rented the house from Michael and Trudy Hellios (landlords). *Klitzka*, 348 Ill. App. 3d at 595. When Alexus was 2½ years old, she and her mother went to the tenants' home, where she was bitten in the face by the tenants' dog. *Id*. at 595-96. Alexus, by her mother, filed a complaint against both the tenants, who were not parties to the appeal, and the landlords. *Id*. at 596. In it, Alexus alleged the landlords were negligent for allowing the dog to remain on the tenants' property "though they knew

or should have known that the dog was dangerous." *Id*. The tenants said their dog had never before displayed "vicious tendencies" except in a few altercations with other dogs. *Id*. Alexus's parents claimed they had avoided the dog before the incident because it would "frequently growl and bark at people who passed by" the yard. *Id*. The trial court granted summary judgment for the landlords. *Id*.

¶ 21 Alexus appealed arguing that the landlords should have known the dog was dangerous because they "observed the dog barking while it was chained in the front yard and therefore had sufficient notice of its vicious propensities towards children." *Klitzka*, 348 Ill. App. 3d at 601. The appellate court disagreed and pointed out the lack of evidence of "specific occurrences in which the dog bit or even growled at children before the incident." *Id*. Citing *Goennenwein*, the court stated Alexus was required to present evidence to show the landlords knew the dog was a danger to children and had failed to do so. *Id*. The court then held:

"[A] landlord owes no duty to a tenant's invitee to prevent injuries proximately caused by an animal kept by the tenant on the leased premises if the landlord does not retain control over the area where the injury occurred." *Id*.

¶ 22 Similar to *Klitzka*, in the present case plaintiffs were unable to offer any evidence of a specific occurrence in which the dog bit or growled at a child before the incident. The only evidence they offered of the dog's "dangerous propensities" was one conversation in which Shatat allegedly told Rodriguez to remove the dog because the dog was "tearing up the basement." However, chewing up a basement does not equate with having a vicious propensity toward children. Plaintiffs offer no other evidence to support their conclusion that the dog was dangerous, and we will not take as true a conclusion of fact unsupported by specific factual allegations. *Buckner*, 287 Ill. App. 3d at 176.

¶ 23 In addition, *Klitzka* offers further support for our decision because, in *Klitzka*, the court found a landlord does not owe a duty to a tenant's invitee if the landlord does not retain control of the area, and in the present case the injury did not occur on property owned by the landlord. Rather, the incident occurred on property owned by another person, occupied by plaintiffs, and there is no suggestion that defendants somehow controlled the property. Based on the record before us, plaintiffs cannot show that defendants owed them a duty. Therefore, the trial court properly dismissed plaintiffs' negligence claim pursuant to section 2-619.

¶ 24 Furthermore, although Illinois case law does not directly answer the issue as we have framed it, a number of cases from other jurisdictions suggest that, generally, landlords are not responsible for injuries caused by a tenant's dog away from the leased premises. See *Kimbrough v. Keenum*, 68 So. 3d 738 (Miss. Ct. App. 2011); *Feister v. Bosack*, 497 N.W.2d 522 (Mich. Ct. App. 1993); *Fernandez v. Marks*, 642 P.2d 542 (Haw. Ct. App. 1982).

¶ 25 In *Kimbrough*, the two plaintiffs were attacked by two pit bulls on the plaintiffs' own property. *Kimbrough*, 68 So. 3d at 738. The pit bulls were owned by Tommy Weaver, who lived in a rental property across the street from the plaintiffs' residence with his girlfriend, Margarete Younts. *Id*. at 739. The plaintiffs filed a negligence suit against Weaver, Younts, and the landlords of the rental property where Weaver and Younts resided, arguing that all the defendants owed a duty to protect the plaintiffs from the "dangerous propensities of the pit bulls." *Id*. The plaintiffs also argued that the landlords knew the dogs had previously

chased and attacked two young boys who had been riding their bikes. *Id*. The trial court granted summary judgment to the landlords, finding that they owed no duty to the plaintiffs because the attack occurred on the plaintiffs' property, "which was outside of the defendants' ownership and control." *Id*. In finding the summary judgment proper, the appellate court held, as a matter of law, the landlords did not owe a duty of reasonable care to the plaintiffs, so "any questions of fact as to whether the [landlords] had knowledge of the dogs' dangerous propensities are moot." *Id*. at 741. The *Kimbrough* court also suggested the "majority view holds that landlords are not responsible for dog attacks that occur outside of the leased premises." *Id*. at 740 (citing *Stokes v. Lyddy*, 815 A.2d 263 (Conn. App. Ct. 2003); *Tran v. Bancroft*, 648 So. 2d 314 (Fla. Dist. Ct. App. 1995); *Fernandez*, 642 P.2d 542 ; *Feister*, 497 N.W.2d 522; *Shen v. Kornienko*, 253 A.D.2d 396 (N.Y. App. Div. 1998); *Shafer v. Beyers*, 613 P.2d 554 (Wash. Ct. App. 1980)).

¶ 26 Similarly in *Feister*, Edward Runyon leased a property to Gordon Bosack, who eventually acquired a dog. *Feister*, 497 N.W.2d at 523. The dog broke its chain and escaped one day and, about a half-mile from the leased premises, bit Elizabeth Feister while she was on her grandparents' property. *Id*. Daniel Feister, as next friend of Elizabeth, brought suit alleging strict liability against Bosack and common law negligence against Runyon. *Id*. The trial court granted summary disposition to Runyon, and on appeal, the reviewing court affirmed saying, "[a] landlord has no duty to protect third parties from injuries inflicted by a tenant's pet that occur away from the leased premises." *Id*.

¶ 27 In *Fernandez*, the plaintiffs were attacked by a tenant's dogs while away from the leased premises. *Fernandez*, 642 P.2d at 543. There was no evidence the landlord was aware of the presence of dogs on the leased property, but the lease provided that animals could be kept "securely fenced" on the property. *Id*. In affirming summary judgment for the owner of the leased premises, the reviewing court stated that it was "unwilling" to make a landlord, "in effect, an insurer of the public against injuries, off the premises, by dogs domiciled by tenants on the landlord's premises." *Id*. at 544.

¶ 28 We believe our decision is in line with the public policy of placing responsibility for injuries occurring off of the leased premises on the owner of the dog in the first instance. Like the court in *Fernandez*, we are unwilling to make a landlord an insurer of the public against injuries caused away from the premises by a tenant's dog. *Fernandez*, 642 P.2d at 544. Similarly, the Second District in *Klitzka* noted that it was promoting a policy of placing responsibility where it belonged by declining to hold the landlord responsible for the acts of a tenant's dangerous animal on the leased property. *Klitzka*, 348 Ill. App. 3d at 600 (citing *Clemmons v. Fidler*, 791 P.2d 257, 260 (Wash. Ct. App. 1990)). Based on the authority cited above, we decline to extend a landlord's duty to protect third parties from injury caused by a tenant's pet to injuries that occur away from the leased premises.

¶ 29 For the foregoing reasons, we affirm the judgment of the trial court.

¶ 30 Affirmed.