NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 220873-U

NO. 4-22-0873

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
August 9, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| C.R., a Minor by Her Mother and Next Friend, | ) | Appeal from the |
|     JEANETTE ROWAN, | ) | Circuit Court of |
|     Plaintiff-Appellant, | ) | Boone County |
|     v. | ) | No. 17L17 |
| DANIELLE OLIGER, TOM SMALLEY, and TWIN | ) | |
| OAKS REK, LLC, | ) | Honorable |
|     Defendants | ) | Stephen Balogh, |
| (Twin Oaks REK, LLC, Defendant-Appellee). | ) | Judge Presiding. |

JUSTICE TURNER delivered the judgment of the court.
Justices Zenoff and Lannerd concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The appellate court affirmed, concluding the trial court did not err in granting
defendant's motion for summary judgment.

¶ 2        On September 2, 2022, the trial court granted a motion for summary judgment

filed by defendant, Twin Oaks REK, LLC (Twin Oaks).  Plaintiff, minor C.R. by her mother

Jeanette Rowan, appeals, arguing the court erred in granting the motion for summary judgment

on both counts.  We affirm.

¶ 3                                    I. BACKGROUND

¶ 4        In June 2017, C.R. through her mother, filed the initial complaint naming Danielle

Oliger and Tom Smalley as defendants, seeking to recover damages sustained when a dog owned

by Oliger and Smalley bit C.R.  Oliger and Smalley failed to respond to the complaint, and the

trial court entered a default judgment against them.  Oliger and Smalley moved to vacate the

default judgment, which was granted, but failed to retain counsel and proceeded *pro se*. Oliger and Smalley repeatedly failed to appear or comply with court orders, and the court was required to compel compliance through threats of contempt.

¶ 5 In May 2019, plaintiff filed an eight count amended complaint naming as defendants Oliger, Smalley, and Twin Oaks. As to Twin Oaks, plaintiff alleged a violation of the Animal Control Act (Act) (510 ILCS 5/1 *et seq.* (West 2016)) (count III) and negligence (count VI).

¶ 6 Oliger and Smalley were tenants of a residential property leased by Twin Oaks. In addition to their rental agreement, Oliger and Smalley signed a pet agreement with Twin Oaks for their dog, named Diesal. Among other requirements, the pet agreement required Diesal to be neutered, and the owners were required to leash Diesal when he was outside the rental unit. The agreement also required the owners to prevent Diesal from causing damage to the rental unit, and the agreement prohibited feeding and watering Diesal on carpeted areas. The pet agreement also stated:

> "12. Tenant shall be liable to owner for all damages or expenses arising out of actions of the pet, and shall hold landlord and his agents and employees harmless from all liability or loss arising out of the actions of the pet.
>
> 13. In the event landlord, in his sole discretion, shall determine that it is in his best interest to revoke this agreement, he may do so on 30 days written notice to tenant to remove the pet. Tenant shall permanently remove the pet from the premises within thirty days in compliance with such notice."

¶ 7          The undisputed facts reveal, on July 14, 2016, C.R. was one of the tenants' guests on the residential property for a cookout.  C.R. entered the house to get a bandage for a bee sting.  Diesal approached C.R. and bit C.R., causing injuries to her face.

¶ 8          Robert Leudtke, the owner of Twin Oaks, testified in his deposition he did not have any knowledge of Diesal biting anyone prior to renting the home to Oliger and Smalley.  Leudtke was often at the neighboring house and regularly saw Diesal tethered outside the house.  Leudtke also testified he was not aware of the incident with C.R. until Oliger informed him she had been sued.

¶ 9          In Oliger's deposition, she testified Diesal bit a woman at their prior residence in 2013.  Oliger explained after the incident, they had to move or get rid of Diesal, which is why they moved into the Twin Oaks property.  Oliger believed she told Leudtke they needed to move because of the dog but was not positive if she told Leudtke Diesal had bitten someone.  In 2015, after moving into the Twin Oaks property, Diesal bit the leg of a minor who ran through the yard.  Oliger was unsure if she told Leudtke about this incident.

¶ 10         In June 2022, Twin Oaks filed a motion for summary judgment.  Twin Oaks argued it could not be an owner under the Act and it owed no duty to plaintiff where it did not retain control over Diesal or the premises.

¶ 11         Plaintiff responded to Twin Oaks' motion for summary judgment.  Plaintiff argued there was a genuine issue of material fact about whether Twin Oaks exerted control over Diesal and the property and Leudtke knew or should have known of Diesal's aggressive nature.  Therefore, plaintiff argued, Twin Oaks was liable as an owner under the Act and had a duty to keep the dog from harming others.

¶ 12　　　　　After a September 2022 hearing on the motion, the trial court issued a written decision granting Twin Oaks' motion for summary judgment. The court determined there was no genuine issue of material fact. Oliger and Smalley were Diesal's owners at the time of the incident and Twin Oaks had not assumed responsibility for control of the dog. Therefore, Twin Oaks was not an owner under the Act. Further, Illinois public policy declined imposing liability on a landlord for a tenant's dangerous dog. The court's written decision included a finding pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016).

¶ 13　　　　　On September 30, 2022, plaintiff filed a timely notice of appeal in compliance with Illinois Supreme Court Rule 303 (eff. July 1, 2017).

¶ 14　　　　　　　　　　　　　　　II. ANALYSIS

¶ 15　　　　　As an initial matter, on April 7, 2023, plaintiff filed a second motion for leave to file an amended notice of appeal. Plaintiff noted the initial notice of appeal erroneously identified Rule 303 as the basis for this court's jurisdiction. However, because the appealed judgment only disposed of the claims involving Twin Oaks, this court has jurisdiction under Rule 304(a). "In general, the filing of a notice of appeal is the only jurisdictional step required to perfect an appeal; thus, where an appellant cites an incorrect supreme court rule as a basis for jurisdiction in its notice of appeal, that deficiency does not divest this court of jurisdiction." *In re Miller*, 396 Ill. App. 3d 910, 913, 820 N.E.2d 1123, 1126 (2009). As the trial court made a proper Rule 304(a) finding, we conclude we are vested with jurisdiction pursuant to Rule 304(a) and amending the notice of appeal at this juncture is unnecessary.

¶ 16　　　　　On appeal, plaintiff challenges the trial court's grant of summary judgment in favor of Twin Oaks as to counts III and VI of her amended complaint.

¶ 17      A grant of summary judgment is proper when "the pleadings, depositions, admissions, and affidavits on file establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Gillespie v. Edmier*, 2020 IL 125262, ¶ 9, 182 N.E.3d 54 (citing 735 ILCS 5/2-1005(c) (West 2018)).  When determining whether a genuine issue of material fact exists, the reviewing court must construe the pleadings, depositions, admissions, and affidavits strictly against the movant. *Gillespie*, 2020 IL 125262, ¶ 9.  "We review a motion for summary judgment in the light most favorable to the nonmoving party." *Gillespie*, 2020 IL 125262, ¶ 9.  This court reviews *de novo* a circuit court's order granting summary judgment. *Gillespie*, 2020 IL 125262, ¶ 9.

¶ 18                              A. Animal Control Act

¶ 19      Section 16 of the Act (510 ILCS 5/16 (West 2016)) states as follows:

> "If a dog ***, without provocation, attacks, attempts to attack, or injures any person who is peaceably conducting himself or herself in any place where he or she may lawfully be, the owner of such dog *** is liable in civil damages to such person for the full amount of the injury proximately caused thereby."

"To prevail on a claim under the Act, a plaintiff must prove the following: (1) an injury caused by an animal owned by the defendant; (2) lack of provocation; (3) the peaceable conduct of the injured person; and (4) the presence of the injured person in a place where he has a legal right to be." (Internal quotation marks omitted.) *Kindel v. Tennis*, 409 Ill. App. 3d 1138, 1140, 949 N.E.2d 1119, 1121 (2011).  The sole issue on appeal of the motion for summary judgment is whether Twin Oaks was an "owner" of Diesal for purposes of the Act. According to the Act:

> " 'Owner' means any person having a right of property in an animal, or who keeps or harbors an animal, or who has it in his care, or acts as its custodian,

or who knowingly permits a dog to remain on any premises occupied by him or her."  510 ILCS 5/2.16 (West 2016).

Plaintiff argues Twin Oaks qualified as an owner of Diesal under the Act by "harboring" Diesal through the terms of the pet agreement.

¶ 20  Although the Act provides no definition for the term "harbor," the Illinois Supreme Court has explained:

> "The verb '[h]arbor' means '[t]o afford lodging to, to shelter, or to give a refuge to.' (Black's Law Dictionary 646 (5th ed. 1979).)  Black's Law Dictionary defines '[k]eeper of dog' as: 'A harborer of a dog. [Citation.]  Any person, other than owner, harboring or having in his possession any dog. [Citation.]  One who, either with or without owner's permission, undertakes to manage, control, or care for it as dog owners in general are accustomed to do.'  (Black's Law Dictionary 780 (5th ed. 1979).)  See also 4 Am. Jur. 2d *Animals* sec. 92 (1962); 3A C.J.S. *Animals* sec. 205 (1973)."  *Steinberg v. Petta*, 114 Ill. 2d 496, 501, 501 N.E.2d 1263, 1265 (1986)

The supreme court therefore determined harboring an animal "involves some measure of care, custody, or control."  *Steinberg*, 114 Ill. 2d at 501, 501 N.E.2d at 1265.  Illinois courts have consistently held that a person's status as a harborer or keeper is dependent on control over the animal at the time of the injury.  *Frost v. Robave, Inc.*, 296 Ill. App. 3d 528, 535, 694 N.E.2d 581, 617 (1998) (collecting cases).

¶ 21  Even under the terms of the pet agreement, Twin Oaks is not the type of "owner" contemplated by the Act.  The stipulations in the pet agreement did not grant Twin Oaks a property interest in Diesal, obligate Twin Oaks to feed and water Diesal, or give Twin Oaks any

benefit from Diesal's existence. See *Howle v. Aqua Illinois, Inc.*, 2012 IL App (4th) 120207, ¶ 51, 978 N.E.2d 1132. No one from Twin Oaks exercised custody or control over Diesal, no one from Twin Oaks cared for Diesal in the owner's absence, and no one from Twin Oaks was present at the time of the injury. See *Goennenwein by Goennenwein v. Rasof*, 296 Ill. App. 3d 650, 654, 695 N.E.2d 541, 544 (1998) ( "[W]here the owner of the animal is present and in control of it, the property owner cannot be considered an 'owner' under the Act merely because the property owner has permitted the animal to be on the premises."). Twin Oaks was not even aware of the incident until Oliger informed Leudtke she had been served in the present lawsuit. Oliger and Smalley were the uncontested legal owners of Diesal. We find the trial court properly found in favor of Twin Oaks on plaintiff's statutory claim.

¶ 22                                    B. Negligence

¶ 23          To establish negligence, a plaintiff must set forth facts showing the existence of the following: "(1) a duty owed by the defendant to the plaintiff, (2) a breach of that duty, and (3) an injury proximately caused by that breach." *Coole v. Central Area Recycling*, 384 Ill. App. 3d 390, 396, 893 N.E.2d 303, 309 (2008). "A defendant in a negligence suit is entitled to summary judgment if he can demonstrate that the plaintiff has failed to establish a factual basis for one of the required elements of a cause of action for negligence." *Smith v. Tri-R Vending*, 249 Ill. App. 3d 654, 658, 619 N.E.2d 172, 175 (1993). Whether the defendant owes a duty to the plaintiff is a question of law for the court to decide. *Espinoza v. Elgin, Joliet & Eastern Ry. Co.*, 165 Ill. 2d 107, 114, 649 N.E.2d 1323, 1326 (1995).

¶ 24          "It is well settled in Illinois that a landlord is not liable for injuries caused by a defective or dangerous condition on premises leased to a tenant and under the tenant's control." *Gilley v. Kiddel*, 372 Ill. App. 3d 271, 275, 865 N.E.2d 262, 266 (2007). "Therefore, a lessor

who relinquishes control of property to a lessee owes no duty to a third party who is injured while on the leased property." *Klitzka v. Hellios*, 348 Ill. App. 3d 594, 597, 810 N.E.2d 252, 256 (2004).

¶ 25        Illinois law has determined exceptions to the general principle landlords are not liable for third-party damages:

> "(1) a latent defect exists at the time of the leasing that the landlord should know about; (2) the landlord fraudulently conceals a dangerous condition; (3) the defect causing the harm amounts to a nuisance; (4) the landlord makes a promise at the time of the leasing to repair a condition; (5) the landlord violates a statutory requirement of which a tenant is in the class designated to be protected by such requirement [citation]; and (6) the landlord voluntarily undertakes to render a service [citation]." *Klitzka*, 348 Ill. App. 3d at 598, 810 N.E.2d at 257.

¶ 26        Plaintiff does not explicitly argue any of these exceptions apply. Instead, plaintiff cites to a California case and a New York case where the landlords had the right to terminate the lease of the animal owners and knew the animals had vicious tendencies (*Uccello v. Laudenslayer*, 44 Cal. App. 3d 504, 118 Cal. Rptr. 741 (1975); *Strunk v. Zoltanski*, 62 N.Y.2d 572, 468 N.E.2d 13 (1984)) to argue Twin Oaks is liable for plaintiff's injuries. Plaintiff argues Twin Oaks had actual knowledge Diesal was a dangerous animal, had the power to remove Diesal beyond eviction, and the incident occurred on Twin Oaks's premises.

¶ 27        In *Uccello*, an invitee of the tenant sued the landlord for negligence after the tenant's dog attacked her. The California Court of Appeals determined the landlord could be held liable. The California court noted it found no case to support its determination the landlord owed a duty of care to a tenant's invitees but held, "if a landlord has such a degree of control

over the premises that it fairly may be concluded that he can obviate the presence of the dangerous animal and he has knowledge thereof, *an enlightened public policy* requires the imposition of a duty of ordinary care." (Emphasis added.) *Uccello*, 44 Cal. App. 3d at 512, 118 Cal. Rptr. At 746.

¶ 28      In *Strunk*, a minor approached the tenant's restrained dog and was bitten. The New York court affirmed the denial of the landlord's motion for summary judgment, finding there was a question as to the landlord's knowledge at the time of leasing of the dog's "vicious propensities." *Strunk*, 62 N.Y.2d at 578, 468 N.E.2d at 16. The New York court noted, citing *Uccello*, it did "not intend to suggest that the landlord would be subject to the same strict liability to which a tenant as harborer of the dog would be subject [citation], but landlords as others must exercise reasonable care not to expose third persons to an unreasonable risk of harm." *Strunk*, 62 N.Y.2d at 575-76, 468 N.E.2d at 15.

¶ 29      Illinois courts have rejected the rule as laid down in *Uccello*. See *Klitzka*, 348 Ill. App. 3d at 600, 810 N.E.2d at 258; *Sedlacek v. Belmonte Properties, LLC*, 2014 IL App (2d) 130969, ¶ 15, 16 N.E.3d 878. We reject the rule in *Strunk* on similar grounds. The court in *Klitzka* determined "our decision to decline to impose vicarious liability upon a landlord for a tenant's dangerous animal 'promotes the salutary policy of placing responsibility where it belongs, rather than fostering a search for a defendant whose affluence is more apparent than his culpability.' " *Klitzka*, 348 Ill. App. 3d at 600, 810 N.E.2d at 258 (quoting *Clemmons v. Fidler*, 58 Wash. App. 32, 38, 791 P.2d 247, 260 (1990)).

¶ 30      Further, Illinois courts have agreed with other jurisdictions in rejecting *Uccello* on the ground a landlord's power of eviction does not mitigate the public policy concern. "[T]he public policy concerns raised by the *Uccello* court are not served by imposing liability upon

landlords in these cases because such a rule leads to the relocation, not elimination, of the danger the animal presents." *Klitzka*, 348 Ill. App. 3d at 600, 810 N.E.2d at 258 (citing *Feister v. Bosack*, 198 Mich. App. 19, 25, 497 N.W.2d 522, 525 (1993); *Wright v. Schum*, 105 Nev. 611, 613, 781 P.2d 1142, 1143 (1989)).

¶ 31    Plaintiff argues *Klitzka* and *Sedlacek* are distinguishable because Twin Oaks had authority to remove Diesal beyond eviction under the terms of the pet agreement. The pet agreement stated:

> "In the event landlord, in his sole discretion, shall determine that it is in his best interest to revoke this agreement, he may do so on 30 days written notice to tenant to remove the pet. Tenant shall permanently remove the pet from the premises within thirty days in compliance with such notice."

This clause still places the responsibility of removing the dog with the tenants. Failure by the tenants to remove the dog after the landlord's notice would constitute a breach of the express terms of the lease. A tenant's breach of the terms of the lease may result in eviction proceedings.

¶ 32    Finally, plaintiff argues the Illinois cases are distinguishable because Twin Oaks had knowledge of Diesal's aggressive history. However, plaintiff does not cite, and our research does not reveal, an Illinois case supporting the proposition a landlord's knowledge of a dog's aggressive tendencies would make them liable for injuries caused by the dog. Rather, as the *Klitzka* court determined, even *if* it accepted *Uccello*, there was inadequate evidence the landlord was aware of the dog's dangerous tendencies. *Klitzka*, 348 Ill. App. 3d at 600-01, 810 N.E.2d at 528. As we do not follow *Uccello*, however, it is irrelevant whether Twin Oaks was aware of Diesal's aggressive history.

¶ 33     Consistent with Illinois law, we continue to hold "a landlord owes no duty to a tenant's invitee to prevent injuries proximately caused by an animal kept by the tenant on the leased premises if the landlord does not retain control over the area where the injury occurred." *Klitzka*, 348 Ill. App. 3d at 601, 810 N.E.2d at 259. As Twin Oaks owed no duty to plaintiff, plaintiff cannot sustain a negligence action, and summary judgment in Twin Oaks's favor was appropriate.

¶ 34                                III. CONCLUSION

¶ 35     For the reasons stated, we affirm the trial court's judgment.

¶ 36     Affirmed.