ALEXUS KLITZKA, a Minor, by Patricia Teutonico, Her Mother and Next Friend, Plaintiff-Appellant, v. MICHAEL HELLIOS *et al.*, Defendants-Appellees (Mark Hellios *et al.*, Defendants).

Second District   No. 2—03—0334

Opinion filed May 17, 2004.—Rehearing denied June 14, 2004.

Todd A. Heller and Bruce A. Slivnick, both of Law Offices of Todd A. Heller & Associates, of Deerfield, for appellant.

Philip A. Prossnitz, of Law Office of Theodore A.E. Poehlmann, P.C., of Woodstock, for appellees.

JUSTICE BYRNE delivered the opinion of the court:

This appeal presents an issue of first impression in Illinois: under what circumstances does a landlord owe a duty of care to his tenant's invitees to prevent injury from an attack by an animal kept by the tenant on the leased premises? On April 17, 2000, plaintiff, Alexus Klitzka, and her mother visited the home of defendants Mark and Amanda Hellios, where Alexus was bitten in the face by the couple's dog, Haley. Mark and Amanda leased the home from Mark's parents, defendants Michael and Trudy Hellios. Mark and Amanda lacked insurance to cover injuries to invitees in their home. Alexus filed a three-count complaint alleging, *inter alia*, that Michael and Trudy knew or should have known that Haley was dangerous and therefore breached a duty to warn and protect her. Michael and Trudy moved for summary judgment, arguing that they were landlords who had no control over the premises and therefore owed Alexus no duty. The trial court granted Michael and Trudy summary judgment. Alexus appeals, arguing that summary judgment was inappropriate because (1) there is a question of material fact as to whether Michael and Trudy knew or should have known that the dog was dangerous, and (2) Michael and Trudy breached a duty to exercise reasonable care to prevent Alexus' injuries. We affirm, holding that, even if Michael and Trudy knew the dog was dangerous, they had no duty to protect Alexus because they retained no control over the portion of the premises where the injury occurred.

## FACTS

On April 17, 2000, Alexus was a 2½-year-old child who lived with her parents. Mark and Amanda lived next door in a house they rented from Michael and Trudy Hellios. There was no written lease, but Mark and Amanda paid $700 monthly rent. It is undisputed that Mark and Amanda held exclusive possession of the premises and that Michael and Trudy retained no control over the home. Alexus concedes that a landlord-tenant relationship existed.

In 1998, Mark and Amanda purchased an Akita puppy and named it Haley. Mark worked for Hellios Construction, his father's company, and he took Haley there daily. Michael saw the dog frequently at work. Mark and Amanda did not submit Haley to any formal obedience training, but they consulted a book about the Akita breed.

Michael and Trudy read parts of the book, as well. One portion of the book states that Akitas can serve as exemplary guard dogs and may display aggression toward unfamiliar people and animals.

On April 17, 2000, Alexus and her mother went to Mark and Amanda's home so Alexus could play with their son. Ten minutes later and without any warning or provocation, Haley bit Alexus in the face while she was in the living room. Alexus suffered facial swelling, bruising, abrasions, lacerations, and puncture wounds.

Mark and Amanda denied that Haley exhibited any "vicious tendencies" before April 17, 2000. However, they admitted that Haley had an altercation with a stray dog, and neither animal was hurt. Amanda also admitted that during the summer of 1999, Haley fought with dogs owned by neighbors who lived across the street.

Alexus' parents asserted that they attempted to avoid Haley before the incident because the dog would frequently growl and bark at people who passed by Mark and Amanda's yard. Alexus' mother stated that, during the summer of 1999, Amanda said that Haley had been banned from the construction company after fighting with another dog there.

Alexus filed her complaint on July 18, 2001. Counts I and II were directed toward Mark and Amanda, the dog's owners. Count III alleged that Michael and Trudy were negligent for (1) allowing Haley to remain on the premises even though they knew or should have known that the dog was dangerous; (2) failing to determine whether Haley was unmanageable and uncontrollable; and (3) failing to inform Alexus or her parents of the danger. As a direct result of this alleged negligence, Haley attacked Alexus, who suffered severe facial injuries that required 15 to 20 stitches and caused permanent scarring and hypersensitivity.

The trial court granted Michael and Trudy summary judgment, and found that there was no just cause or reason to delay enforcement or appeal of the order. See 155 Ill. 2d R. 304(a). This timely appeal followed.

## ANALYSIS

In a negligence action, the plaintiff must provide sufficient facts showing the existence of a duty owed by the defendant, a breach of that duty, and an injury proximately resulting from the breach. *Vesey v. Chicago Housing Authority*, 145 Ill. 2d 404, 411 (1991). Where the plaintiff fails to provide facts "from which the court could infer the existence of a duty," summary judgment for the defendant is appropriate. *Vesey*, 145 Ill. 2d at 411. The existence of a duty is a question of law to be determined by the court. *Vesey*, 145 Ill. 2d at 411.

In all appeals from the entry of summary judgment, we conduct a

*de novo* review of the evidence in the record. *Espinoza v. Elgin, Joliet & Eastern Ry. Co.*, 165 Ill. 2d 107, 113 (1995). Summary judgment is appropriate where the pleadings, affidavits, depositions, and admissions on file, when viewed in the light most favorable to the nonmoving party, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 1998); *Bier v. Leanna Lakeside Property Ass'n*, 305 Ill. App. 3d 45, 50 (1999). "Summary judgment is a drastic means of resolving litigation and should be allowed only when the right of the moving party is clear and free from doubt." *Bier*, 305 Ill. App. 3d at 50. "Therefore, where reasonable persons could draw divergent inferences from the undisputed material facts or where there is a dispute as to a material fact, summary judgment should be denied and the issue decided by the trier of fact." *Espinoza*, 165 Ill. 2d at 114. If a party moving for summary judgment introduces facts which, if not contradicted, would entitle him to a judgment as a matter of law, the opposing party may not rely on his pleadings alone to raise issues of material fact. *Hermes v. Fischer*, 226 Ill. App. 3d 820, 824 (1992).

On appeal, Alexus contends that summary judgment was inappropriate because there is a question of material fact as to whether Michael and Trudy knew or should have known that the dog was dangerous. Consequently, she argues, Michael and Trudy breached a duty to exercise reasonable care to prevent her injuries. Because there is no dispute that Michael and Trudy did not retain any possessory rights in the home, we conclude that summary judgment for Michael and Trudy is appropriate even if a factual question exists as to whether they could have foreseen the dog bite.

■ Under traditional common law, where the " 'landlord retains control of a portion of the premises leased to the tenant[, the landlord] has a duty, as the party in control, to use ordinary care in maintaining that part of the premises in a reasonably safe condition.' " *Vesey*, 145 Ill. 2d at 413, quoting *Rowe v. State Bank of Lombard*, 125 Ill. 2d 203, 220 (1988). Conversely, it is well settled in Illinois that a landlord is not liable for injuries caused by a dangerous or defective condition on the premises leased to a tenant and under the tenant's control. *Vesey*, 145 Ill. 2d at 413. Therefore, a lessor who relinquishes control of property to a lessee owes no duty to a third party who is injured while on the leased property. The landlord's liability for the leased premises is extinguished because the lessee acquires an estate in the land and temporarily becomes both owner and occupier, subject to all of the responsibilities of one in possession to those who enter upon the land and those outside of its boundaries. *Rowe*, 125 Ill. 2d at 221. We must

identify the degree to which the landlord retained control over the premises before we consider the foreseeability of the harm.

■ Several exceptions to the rule permit a third party to recover damages from a landlord who does not control the premises on which the injury occurred: (1) a latent defect exists at the time of the leasing that the landlord should know about; (2) the landlord fraudulently conceals a dangerous condition; (3) the defect causing the harm amounts to a nuisance; (4) the landlord makes a promise at the time of the leasing to repair a condition; (5) the landlord violates a statutory requirement of which a tenant is in the class designated to be protected by such requirement (*Yacoub v. Chicago Park District*, 248 Ill. App. 3d 958, 960 (1993)); and (6) the landlord voluntarily undertakes to render a service (*McCoy v. Chicago Housing Authority*, 333 Ill. App. 3d 305, 309 (2002)). Alexus does not argue that any of these exceptions apply to this case.

Alexus cites only one Illinois case to support her argument that a landlord owes a duty to a third-party invitee for injuries caused by the tenant's animal within the leased premises. In *Mangan v. F.C. Pilgrim & Co.*, 32 Ill. App. 3d 563, 565-66 (1975), the 83-year-old plaintiff fell and was injured when a mouse startled her by jumping out of the oven inside her apartment. The appellate court held that the landlord owed the plaintiff a duty to keep those portions of the premises over which it retained control in a reasonably safe condition to prevent injury to people who were lawfully present on the premises. *Mangan*, 32 Ill. App. 3d at 569. The mice infestation was caused by the landlord's failure to maintain sanitary conditions in portions of the building within its control. Because the landlord could have corrected the mice problem, the landlord owed a duty to the plaintiff even though her injuries occurred within the apartment, in an area outside of the landlord's control. *Mangan*, 32 Ill. App. 3d at 570.

This case is factually distinguishable from *Mangan*. In *Mangan*, the *landlord's* omissions regarding areas over which it had control created the condition that caused the plaintiff's injury. Here, the *tenants'* affirmative conduct of bringing the dog into the living space of the home, an area over which the landlords had no control, is what might have been the proximate cause of Alexus' injuries.

In this case, Mark and Amanda paid Michael and Trudy $700 per month for exclusive possession of the home. Acceptance of monthly rental payments by a landlord will generally create a month-to-month tenancy. A month-to-month tenancy can last indefinitely, but can be terminated on 30 days' notice. *A.O. Smith Corp. v. Kaufman Grain Co.*, 231 Ill. App. 3d 390, 399 (1992). Alexus contends that a landlord's right to terminate the month-to-month tenancy and regain possession

of the home is sufficient "control over the premises" to impose liability upon the landlord for injuries to a third party suffered in the home. Alexus cites several cases from other jurisdictions, but this court is not bound by the decisions. See *Mount Vernon Fire Insurance Co. v. Heaven's Little Hands Day Care*, 343 Ill. App. 3d 309, 320 (2003) (cases from foreign jurisdictions do not bind the appellate court); *Cooper v. Illinois State University*, 331 Ill. App. 3d 1094, 1100 (2002) (this court is not bound to follow decisions of federal courts other than the United States Supreme Court).

Furthermore, the foreign cases Alexus cites are unpersuasive or distinguishable. In *Matthews v. Amberwood Associates Ltd. Partnership, Inc.*, 351 Md. 544, 719 A.2d 119 (1998), a child sued the landlord for injuries sustained during a pit bull attack in the tenant's apartment. After acknowledging that a landlord is ordinarily not liable for injuries caused by defects or dangerous conditions on the leased premises, the Maryland Supreme Court concluded that the "no pets" clause in the lease afforded the landlord the right to demand removal of the dog. The right to remove the dangerous animal qualified as the type of control over the premises that justified finding that the landlord breached a duty of care by failing to enforce the "no pets" clause. *Matthews*, 351 Md. at 558, 719 A.2d at 125-26. Unlike the landlord in *Matthews*, Michael and Trudy did not have a contractual right to limit the number or types of animals that Mark and Amanda could bring into their home. The landlords relinquished control over the presence of animals in the home when they did not insist on a "no pets" clause as part of the arrangement with Mark and Amanda.

In *Uccello v. Laudenslayer*, 44 Cal. App. 3d 504, 512, 118 Cal. Rptr. 741, 746-47 (1975), a tenant's young invitee sued the landlord for negligently failing to prevent the tenant's dog from attacking her. Like Mark and Amanda in this case, the tenant possessed the premises pursuant to a month-to-month tenancy. Citing the exceptions that permit an injured invitee to recover from a landlord, the California Court of Appeals stated that "[a] common element in these exceptions is that either at or after the time possession is given to the tenant the landlord retains or acquires a recognizable degree of control over the dangerous condition with a concomitant right and power to obviate the condition and prevent the injury." *Uccello*, 44 Cal. App. 3d at 511, 118 Cal. Rptr. at 746.

The appellate court then noted that the landlord could have threatened to terminate the month-to-month tenancy with notice, thereby coercing the tenant to remove the animal or yield possession of the premises completely. Thus, the landlord's right to terminate the lease gave him such control over the premises that he owed a duty to

protect the invitee from the tenant's dog. *Uccello*, 44 Cal. App. 3d at 512, 118 Cal. Rptr. at 747. Moreover, there was no dispute that the landlord actually knew the dog had a vicious temperament and had previously bitten two other people. Therefore, the court held that "a duty of care arises when the landlord has actual knowledge of the presence of the dangerous animal and when he has the right to remove the animal by retaking possession of the premises." *Uccello*, 44 Cal. App. at 507, 118 Cal. Rptr. at 743; *cf. Palermo v. Nails*, 334 Pa. Super. 544, 548, 483 A.2d 871, 873-74 (1984) (a tenancy at sufferance, allowing the landlord to terminate the tenancy at any time, gave the landlord sufficient control over premises that he owed a duty to prevent the tenant's dog from biting the tenant's invitee). The *Uccello* court opined that, because "enlightened public policy" dictated that "a moral blame attached to [the] landlord's conduct," a contrary result would be "socially and legally unacceptable." *Uccello*, 44 Cal. App. 3d at 512-14, 118 Cal. Rptr. at 746-47. We decline to attach "moral blame" to the landlords' conduct here because we disagree with the result in *Uccello*.

Courts in other jurisdictions provide persuasive arguments for rejecting the rule announced in *Uccello* and its progeny. For example, our decision to decline to impose vicarious liability upon a landlord for a tenant's dangerous animal "promotes the salutary policy of placing responsibility where it belongs, rather than fostering a search for a defendant whose affluence is more apparent than his culpability." *Clemmons v. Fidler*, 58 Wash. App. 32, 38, 791 P.2d 257, 260 (1990). In *Clemmons*, the Washington Court of Appeals anticipated the situation presented here: Mark and Amanda were completely responsible for the dog's presence and behavior in the leased premises, but Alexus sued the landlords upon discovering that the tenants lacked insurance to cover her injuries.

Moreover, " '[h]olding landlords liable for the actions of their tenants' vicious dogs by requiring them to evict tenants with dangerous dogs would merely result in the tenants' moving off to another location with their still dangerous animals.' " *Feister v. Bosack*, 198 Mich. App. 19, 25, 497 N.W.2d 522, 525 (1993), quoting with approval *Wright v. Schum*, 105 Nev. 611, 613, 781 P.2d 1142, 1143 (1989). The Michigan Court of Appeals and the Nevada Supreme Court recognized that the public policy concerns raised by the *Uccello* court are not served by imposing liability upon landlords in these cases because such a rule leads to the relocation, not elimination, of the danger the animal presents.

■ Even if we were to follow *Uccello*, we would still conclude that Michael and Trudy were entitled to summary judgment because there

was inadequate evidence that their tenants' dog was vicious or that Michael and Trudy knew of such viciousness. "It is presumed that a dog is tame, docile, and harmless absent evidence that the dog has demonstrated vicious propensities." *Goennenwein v. Rasof*, 296 Ill. App. 3d 650, 654 (1998). Therefore, even if we followed *Uccello*, Alexus would be required to produce direct or circumstantial evidence that Michael and Trudy actually knew that the dog was dangerous to children. Compare *Goennenwein*, 296 Ill. App. 3d at 654 (court held that four-year-old plaintiff was required to prove that defendant dog owner knew or should have known dog was dangerous to children), with *Uccello*, 44 Cal. App. 3d at 514 n.4, 118 Cal. Rptr. at 748 n.4 (invitee must prove landlord's actual knowledge, but she may do so with circumstantial and direct evidence).

"We will not malign a breed on the basis of hysteria or rumor, and under Illinois law, 'each dog is to be evaluated individually and is not to be classified as "vicious" merely because of its breed or type.' " *Goennenwein*, 296 Ill. App. 3d at 655, quoting *People v. Riddle*, 258 Ill. App. 3d 253, 260-61 (1994). Therefore, Alexus' reference to the book discussing the Akita breed is irrelevant and inadmissible as circumstantial evidence of Haley's temperament and Michael and Trudy's knowledge thereof.

In her statement of facts, Alexus concedes that before the incident, the tenants (1) permitted the dog to play with their own small children; (2) were unaware of any incident in which the dog bit or growled at a child; and (3) never told Michael and Trudy that they believed the dog was dangerous to children. Alexus nevertheless argues that Michael and Trudy observed the dog barking while it was chained in the front yard and therefore had sufficient notice of its vicious propensities toward children. We disagree. There is no evidence of specific occurrences in which the dog bit or even growled at children before the incident. Although the dog was involved in two previous altercations, those involved unfamiliar dogs, not children. Because a dog ordinarily is not a danger to children, Alexus was required to present evidence to show that Michael and Trudy knew that the dog was a danger to children. See *Goennenwein*, 296 Ill. App. 3d at 654. We conclude that Alexus failed to present adequate evidence on that point to preclude the entry of summary judgment.

We hold that a landlord owes no duty to a tenant's invitee to prevent injuries proximately caused by an animal kept by the tenant on the leased premises if the landlord does not retain control over the area where the injury occurred. A landlord does not retain such control where he has the right to coerce the removal of the animal by threatening to terminate the tenancy. We note that we reach no conclusion as

to whether Alexus could prove the element of proximate causation in this case. For the preceding reasons, the order granting summary judgment is affirmed.

Affirmed.

HUTCHINSON and CALLUM, JJ., concur.