# Illinois Official Reports

## Appellate Court

<div style="border:1px solid">

### *Richard v. Nederlander Palace Acquisition, LLC*, 2015 IL App (1st) 143492

</div>

| | |
|---|---|
| Appellate Court Caption | THOMAS RICHARD, Plaintiff-Appellant, v. NEDERLANDER PALACE ACQUISITION, LLC, an Illinois LLC; NEDERLANDER ORGANIZATION, INC., a Foreign Corporation; LAURENCE CHICAGO VENTURES, LLC, an Illinois LLC; and LAURENCE CHICAGO, LLC, an Illinois LLC, Defendants-Appellees. |
| District & No. | First District, Fourth Division<br>Docket No. 1-14-3492 |
| Filed | December 10, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-L-636; the Hon. John Ehrlich, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Martin Healy, Jr., Kevin T. Veugeler, and Patrick C. Anderson, all of Healy Scanlon, of Chicago, for appellant.<br><br>Julie A. Teuscher, Scott J. Brown, and Thomas A. Fitzgerald, all of Cassiday Schade LLP, of Chicago, for appellees. |
| Panel | JUSTICE COBBS delivered the judgment of the court, with opinion.<br>Justices Howse and Ellis concurred in the judgment and opinion. |

**OPINION**

¶ 1    Plaintiff Thomas Richard appeals from an order of the trial court granting summary judgment in favor of defendants Laurence Chicago Ventures, LLC, and Laurence Chicago, LLC, in his negligence action for injuries sustained in a fall while performing his duties at work. On appeal, plaintiff claims that genuine issues of material fact exist which preclude entry of summary judgment in defendants' favor. We affirm.

¶ 2                              BACKGROUND

¶ 3    The record reveals that on January 15, 2010, plaintiff fell into an uncovered orchestra pit located in front of the stage at the theater where he was employed by Broadway in Chicago as a stagehand. Plaintiff filed a complaint in negligence against eight separate defendants, including Laurence Chicago Ventures, LLC, and Laurence Chicago, LLC, seeking damages for injuries he sustained as a result of the fall. The defendants filed motions to dismiss that complaint pursuant to sections 2-615 and 2-619 of the Code of Civil Procedure (735 ILCS 5/2-615, 2-619 (West 2012)), and those motions were granted.

¶ 4    Plaintiff subsequently filed an amended complaint in negligence against Nederlander Organization, Inc., Nederlander Palace Acquisition, LLC, Laurence Chicago Ventures, LLC, and Laurence Chicago, LLC. Specifically, plaintiff alleged that at all relevant times, each of these four defendants operated, possessed, maintained, controlled, or otherwise held an interest in a certain portion of the Oriental Theatre/Ford Center for the Performing Arts (theater), located at 32 West Randolph Street in Chicago, Illinois.[1] Plaintiff further alleged that on January 15, 2010, he was at the theater performing his duties when he was struck by a pipe that fell from the ceiling and knocked him into an uncovered orchestra pit 10 to 15 feet below. Plaintiff alleged that all four defendants had a duty to exercise reasonable care to discover the dangerous condition on the premises and protect him against that danger, as well as to exercise reasonable care in controlling the work of contractors and employees.

¶ 5    Plaintiff further alleged that in spite of these duties, each of the four defendants committed one or more of the following careless and negligent acts or omissions: (1) failed to make a reasonable inspection of the premises and the work being done; (2) failed to remedy a dangerous condition about which they knew; (3) failed to warn plaintiff about the dangerous condition; (4) failed to properly supervise the work being done on the premises; (5) failed to provide adequate safeguards to prevent plaintiff from injury while lawfully on the premises; (6) failed to ensure pipes and other materials were safely secured to prevent them from falling on those lawfully on the premises; (7) failed to properly cover and/or barricade the opera pit[2] when defendants knew or should have known that such failure was likely to cause danger to those lawfully on the premises; (8) improperly operated, managed, maintained and controlled the premises; and (9) was otherwise careless and negligent in its ownership, possession, operation, maintenance or control of the premises. Plaintiff also alleged that Nederlander Organization, Inc., and Nederlander Palace Acquisition, LLC, improperly managed the budget for safety purposes at the theater. Plaintiff alleged that as a

---

[1]We note that the theater is actually located at 24 West Randolph Street.

[2]For purposes of this appeal, we will use the term "orchestra pit," which the parties, including defendant, use throughout the record.

proximate result of these acts and/or omissions on the part of defendants, he sustained severe and permanent internal and external injuries.

¶ 6 Each of the four defendants filed answers to plaintiff's amended complaint in which they denied all allegations of negligence. Defendants subsequently filed a joint motion for summary judgment in which they argued that none of them owed a duty of care to plaintiff because they were not occupiers, possessors and/or controllers of the premises and had no part in creating the allegedly dangerous condition. Defendants maintained that plaintiff's employer, Broadway in Chicago,[3] was solely responsible for theater operations on the premises. In support of their motion, defendants submitted unsigned copies of a lease between Laurence Chicago Ventures, LLC, and Laurence Chicago, LLC, and a license between Laurence Chicago, LLC, and Broadway in Chicago, both of which pertain to the Oriental Theatre. The defendants also submitted the depositions of Broadway in Chicago employees Louis Raizin, Michael Burkett, Suzanne Bizer, Daniel Yuen, and plaintiff. Plaintiff argued that questions of material fact existed regarding the ownership and control of the theater which precluded entry of summary judgment, and relied upon, *inter alia*, the discovery deposition of James L. Nederlander, who is listed as the manager of both Laurence Chicago Ventures, LLC, and Laurence Chicago, LLC, on the lease between the two entities.

¶ 7 The record shows, and plaintiff does not dispute, that Laurence Chicago Ventures, LLC, owns the Oriental Theatre. The history of that ownership is as follows. On December 29, 2008, Laurence Chicago Ventures, LLC, and the Chicago Theatre Company, executed a merger agreement whereby Laurence Chicago Ventures, LLC, became the surviving entity and the Chicago Theatre Company the terminating entity. Pursuant to that merger agreement, Laurence Chicago Ventures, LLC, succeeded to all of the properties and assets of the terminating entity, including the Oriental Theatre. On December 17, 2007, the Chicago Theatre Company, as landlord, had entered into a lease agreement with Laurence Chicago, LLC, as tenant, for the Oriental Theatre. Accordingly, following the merger agreement, Laurence Chicago Ventures, LLC, rather than the Chicago Theatre Company, which was no longer in existence, was the new landlord under that lease agreement. The record shows that James L. Nederlander was the named signatory under the lease on behalf of both the landlord and the tenant.

¶ 8                                     Contractual Terms of the Lease

¶ 9 The lease between Laurence Chicago Ventures, LLC, as landlord, and Laurence Chicago, LLC, as tenant, reflects that the term of the lease is from December 17, 2007, through December 16, 2014, and the subject of the lease is the Oriental Theatre complex. The lease provides that Laurence Chicago, LLC, "shall occupy and use the Oriental Theatre for the presentation of live theatrical productions and the remaining portions of the premises as business offices" and shall at all times maintain and keep the premises in good order, condition and repair. The lease includes a provision giving Laurence Chicago, LLC, the right to grant a license for the exclusive use of the Oriental Theatre to Broadway in Chicago, LLC. The lease further provides, *inter alia*:

"ALTERATIONS: [Laurence Chicago, LLC,] shall have the right to make any replacement, alteration, improvement or addition to or removal from the Premises

_____
[3]Broadway in Chicago is not a party to this suit.

- 3 -

*** without the consent of [Laurence Chicago Ventures, LLC], except for an Alteration that affects the structure of the Premises which shall only be made with the prior written consent of [Laurence Chicago Ventures, LLC]."

<div align="center">Contractual Terms of the License</div>

The record shows that Laurence Chicago, LLC, entered into a license agreement with Broadway in Chicago on December 17, 2007, which will terminate on July 30, 2020. The license reflects that the subject of the license is the Oriental Theatre and that Broadway in Chicago was allowed to use "the entire theater, without limitation," for the conduct of the business of producing, promoting and presenting stage productions, provided that the theater shall not be used for any pornographic, immoral, obscene or hazardous use of purpose. The license further provides, *inter alia*:

"LICENSEE'S AND LICENSOR'S RESPECTIVE RESPONSIBILITIES: [Broadway in Chicago] shall pay all costs, charges and expenses of every kind and nature whatsoever relating to the Theatre, or any part thereof, and the use maintenance, care and alteration thereof, including, but not limited to water and sewer charges ***.

* * *

[Laurence Chicago, LLC,] shall remain responsible for the repair (but not the routine maintenance generally covered by service contracts, for which [Broadway in Chicago] shall be responsible) and replacement of the building systems in the Theatre (*e.g.* electrical, plumbing, HVAC) and of the building structure, both interior and exterior.

* * *

LICENSEE IMPROVEMENTS: [Broadway in Chicago] shall have the right to make any and all lawful non-structural improvements or alterations to the interior of the Theatre, provided that it obtains the consent of [Laurence Chicago, LLC], which consent shall not be unreasonably withheld or delayed.

* * *

[Broadway in Chicago] shall, at all times during the term hereof, and at its own cost and expense, keep and maintain in good repair and order, the Theatre, both interior and exterior, and shall take all steps necessary to prevent waste, damage or injury thereto.

* * *

NATURE OF LICENSE: This agreement is a license, not a lease, and nothing herein shall be deemed to confer on [Broadway in Chicago] any leasehold rights or fee interest in the real property on which the Theatre is located or in the improvements thereon."

<div align="center">The Accident</div>

Daniel Yuen testified at his discovery deposition that at the time of the accident, he was the head carpenter and union steward at the Oriental Theatre, and he and all of the stagehands who worked at the theater were paid by Broadway in Chicago. On January 15, 2010, the stagehands were in the process of restoring the theater to its original condition after the "load

out" of the *Addams Family* show, in preparation for *Billy Elliot*, the next show to be presented at the theater. As part of the restoring process, a stagehand and Broadway in Chicago employee named Eric Branson was working overhead and lowering a system pipe which was 69 feet long and 1.9 inches in diameter. Branson did not adhere to proper protocol in doing so, and as a result, the pipe fell and hit plaintiff, following which plaintiff fell into the orchestra pit. Immediately prior to the accident, plaintiff had been standing 5 to 10 feet from the edge of the stage.

¶ 14   Yuen further testified that at the time of the accident, a net that would cover the orchestra pit was available and on site at the theater, but had not been set up. Yuen was the person who decided whether the net would be used on any given day and factors that would impact his decision included whether stagehands needed to access the orchestra pit in carrying out their duties. Yuen could not recall why the net was not in use on the day of the accident. When not in use, the orchestra pit net was stored in a container in the orchestra pit, and the net was occasionally transported for use at other theaters operated by Broadway in Chicago. Yuen testified that department stagehands are in charge of safety at the theater and would report major safety issues to Broadway in Chicago department heads. Yuen had never heard of Laurence Chicago Ventures, LLC, or Laurence Chicago, LLC, and had never heard of or met James L. Nederlander.

¶ 15   Plaintiff testified at his discovery deposition that he has worked as a stagehand for 30 years and that he was employed by Broadway in Chicago at the time of the accident. He had been hired by Broadway in Chicago to "load out" the *Addams Family* show, but on the day of the accident, that process had been completed and the stagehands were restoring the theater back to its original condition. In the process of doing so, plaintiff was marking a cable on the stage, when a system pipe fell from overhead and hit him, knocking him into the nearby orchestra pit. Plaintiff's supervisor was Yuen, and no one from Laurence Chicago Ventures, LLC, or Laurence Chicago, LLC, ever directed plaintiff on how to do his job. Plaintiff further testified that he has worked near orchestra pits in the past and was aware of the fall hazards of doing so. Plaintiff was not aware of any rules requiring that nets be used to cover orchestra pits. Plaintiff testified that he filed a workers' compensation claim against Broadway in Chicago in relation to this accident, which remains pending.

¶ 16                                     Theater Management

¶ 17   Louis Raizin testified at his discovery deposition that he has been the president of Broadway in Chicago since its inception in 2000. The Oriental Theatre is one of four theaters in Chicago which Broadway in Chicago operates and Michael Burkett is involved in handling the operations of all four of those theaters. Raizin testified that Broadway in Chicago operates, maintains and controls the Oriental Theatre, and that in his view, it exercised a "soup to nuts" type of oversight and control of the theater, which included the loading out of shows. He further testified that entities with ownership interests in the Oriental Theatre were not involved in the operation of the theater, and that Laurence Chicago Ventures, LLC, and Laurence Chicago, LLC, were not involved in any way with the stagehands at the Oriental Theatre.

¶ 18   Suzanne Bizer testified at her discovery deposition that she is one of two vice presidents of Broadway in Chicago, and that Broadway in Chicago is responsible for operating and managing the Oriental Theatre and supervising activities relating to the theatrical

performances that are held there. Laurence Chicago, LLC, has no involvement in Broadway in Chicago's day-to-day operations of the theater, and stagehands who work there are Broadway in Chicago employees. Bizer further testified that Broadway in Chicago had an orchestra pit net on site at the theater on the day of the accident, that there was no policy in place for the net's use, and that Yuen was the person who would know whether, based on what was occurring in the theater on a particular day, the net could be used that day.

¶ 19 Michael Burkett testified at his discovery deposition that he is the director of operations for Broadway in Chicago. Burkett testified that Broadway in Chicago was aware that stagehands and performers would regularly be on stage in close proximity to the orchestra pit and that someone could sustain injuries if they were to fall into the orchestra pit. Neither Laurence Chicago Ventures, LLC, nor Laurence Chicago, LLC, were involved in any way with stagehands at the Oriental Theatre, nor did either entity direct Broadway in Chicago employees on how to run the theater.

¶ 20 James L. Nederlander testified at his discovery deposition that he is the president of Nederlander Organization, and that separate Nederlander entities perform different functions in theaters across the country. Nederlander was not familiar with the corporate structure of Laurence Chicago Ventures, LLC, and Laurence Chicago, LLC, and testified that he had not previously seen the lease between the Chicago Theatre Company and Laurence Chicago, LLC, could not recall whether he had previously signed such a document, even though he is listed as the signatory for both entities, and did not know whether an executed copy of the lease is in existence. Nederlander further testified that he did not know whether he ever signed a copy of the license between Laurence Chicago, LLC, and Broadway in Chicago or whether the license was in effect at the time of the accident, but that he never reads anything that he signs. His attorneys review documents for him and he signs them after that review as long as his attorney indicates that it is okay for him to do so. Nederlander testified that he has no direct involvement in the day-to-day operations of Broadway in Chicago or the Oriental Theatre. His only visits to the Oriental Theatre have been for purposes of seeing a show.

¶ 21                             Summary Judgment Hearing

¶ 22 On August 19, 2014, the parties appeared in court for a hearing on defendants' motion for summary judgment; however, no hearing took place on that date. At that time, plaintiff's counsel argued that because the copies of the lease and license that defendants attached to their summary judgment motion were not signed, a question existed as to whether those documents were in effect at the time of the accident. In response, defense counsel pointed out that plaintiff had not raised this argument in his brief in response to the summary judgment motion. Defense counsel further argued that in response to plaintiff's requests to admit, defendants had admitted that the lease and license in question were in effect at the time of the accident, and that this judicial admission is equivalent to an affidavit.

¶ 23 The trial court continued the hearing on the motion for summary judgment so that defense counsel could provide signed copies of the lease and license for purposes of having a "clean record." Defense counsel opined that if defendants were unable to tender signed documents, the result would be a question of fact. The trial court responded "no, not necessarily *** if there are statements indicating that these are the documents that are in existence and there's been no objection up to that point, then you will have waived that argument because you didn't make it earlier. But I want to see whether or not those

documents exist." On September 2, 2014, defendants tendered signed copies of the lease and license to the court.

¶ 24    The circuit court granted summary judgment in favor of all four defendants. In doing so, the court stated, *inter alia*, that the terms of the contract, rather than common law principles, applied to this case. The court noted that pursuant to the terms of the license agreement, Laurence Chicago, LLC, was responsible for the repair and replacement of the structural elements of the theater, and found that although the orchestra pit was "absolutely" such a structural element, the pit itself was not what was directly related to plaintiff's injury, but rather, it was the fact that the orchestra pit net had not been extended over the orchestra pit, allowing plaintiff to fall into it and sustain injuries. The court found that the orchestra pit net did not constitute a structural component because it was portable and was not fixed to any structural element of the theater. The court recounted the deposition testimony reflecting that Yuen, a Broadway in Chicago employee, was the person who decided whether the net would be used on any particular day and that none of the defendants were involved in day-to-day operations at the theater. The court thus found that, pursuant to the terms of the contract, defendants did not retain control over any of the instrumentalities that led to plaintiff's injury and thus did not owe him a duty of care.

¶ 25    On appeal, plaintiff contends that the trial court erred in granting summary judgment in favor of Laurence Chicago Ventures, LLC, and Laurence Chicago, LLC because both of those defendants contractually agreed to retain responsibility for structural elements of the theater and thus owed him a duty of care.

¶ 26                                    ANALYSIS
¶ 27    Summary judgment is proper where the pleadings, admissions, affidavits and depositions on file reveal that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2012); *Bruns v. City of Centralia*, 2014 IL 116998, ¶ 12. In determining whether an issue of material fact exists, the court must construe the pleadings and evidentiary materials in favor of the nonmoving party. *Purtill v. Hess*, 111 Ill. 2d 229, 240 (1986). We review the circuit court's entry of summary judgment *de novo*. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992).

¶ 28                                     Waiver
¶ 29    Defendants first argue that plaintiff has waived review of the grant of summary judgment in favor of Nederlander Organization, Inc., and Nederlander Palace Acquisition, LLC. Defendants point out that although all four defendants filed a joint motion for summary judgment, plaintiff contested the motion only as it pertained to Laurence Chicago Ventures, LLC, and Laurence Chicago, LLC, and made no argument in opposition to the motion as it pertained to Nederlander Organization, Inc., and Nederlander Palace Acquisition, LLC, before the trial court or in his opening brief in this appeal.

¶ 30    Issues not raised in the trial court are deemed waived and may not be raised for the first time on appeal. *Haudrich v. Howmedica, Inc.*, 169 Ill. 2d 525, 536 (1996). Additionally, pursuant to Illinois Supreme Court Rule 341(h)(7), points not argued in an opening brief on appeal are waived and shall not be raised in the reply brief. Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013); see also *United Legal Foundation v. Pappas*, 2011 IL App (1st) 093470, ¶¶ 21-23.

Accordingly, we find that plaintiff has waived review of the propriety of entry of summary judgment in favor of Nederlander Organization, Inc., and Nederlander Palace Acquisition, LLC, and affirm the trial court's grant of summary judgment in favor of those two defendants.

¶ 31                          Applicability of the Contracts

¶ 32       We now turn to whether summary judgment in favor of Laurence Chicago Ventures, LLC, and Laurence Chicago, LLC, was proper. To make this determination, we must first address whether the trial court properly relied upon the language of the lease and license that were attached to the motion for summary judgment.

¶ 33       Plaintiff argues that the trial court could not properly rely upon the language in those documents because they were not signed, resulting in a question of fact as to whether they were in effect at the time of the accident. Defendants maintain that the trial court properly relied upon the two documents because the defendants certified to their authenticity in response to plaintiff's second amended request to admit facts, and thus no issue of material fact exists as to which agreements are applicable to this case.

¶ 34       Under Supreme Court Rule 216, a party to an action may serve another party with a written request for his admission of any relevant fact set forth in the request or the admission of the genuineness of any relevant document described in the request. Ill. S. Ct. R. 216(a), (b) (eff. Jan. 1, 2011). An admission in response to a request to admit is a judicial admission that cannot be controverted by contradictory evidence. *Banco Popular v. Beneficial Systems, Inc.*, 335 Ill. App. 3d 196, 207-08 (2002). Here, the record shows that in his second amended request to admit facts, plaintiff asked defendants to admit that the attached exhibits, consisting of unsigned copies of the lease and license, were true and accurate, and that both documents were in effect at the time of the accident. Defendants responded affirmatively, admitting that to be the case. Accordingly, we find that no question of material fact exists pertaining to whether the lease and license upon which the trial court relied were in effect at the time of the accident, and that the circuit court properly relied upon the language contained in those documents in rendering its decision.[4] We now address whether the court's ultimate decision in granting summary judgment in favor of Laurence Chicago Ventures, LLC, and Laurence Chicago, LLC, was proper.

¶ 35                          Laurence Chicago Ventures, LLC

¶ 36       Laurence Chicago Ventures, LLC, argues that summary judgment in its favor was proper because it owed no duty to plaintiff due to lessor immunity. Laurence Chicago Ventures, LLC, contends that the undisputed facts establish that it stepped into the shoes of the Chicago Theatre Company as lessor of the theater under the terms of a merger whereby Laurence

[4]We disagree with plaintiff's argument that a question of fact exists in light of Nederlander's testimony that he did not know whether he had previously seen the lease and license at issue, whether he signed them, or whether they were in effect at the time of the accident. Nederlander also testified that he never reads anything that he signs, but rather, relies upon his attorney to review all documents for him. Accordingly, we do not believe that this testimony detracts from the effect of defendants' admissions to plaintiff's second amended request to admit.

Chicago Ventures, LLC, as surviving entity, succeeded to all rights of the Chicago Theatre Company, as the terminating entity, and that the lease identified it as the landlord of the theater.

¶ 37    To prevail in a negligence action, a plaintiff must sufficiently establish that the defendant owed him a duty, that the duty was breached, and that plaintiff suffered an injury as a proximate result of that breach. *Thompson v. Gordon*, 241 Ill. 2d 428, 438 (2011). If the plaintiff fails to establish any element of his claim, summary judgment for defendant is appropriate. *Dardeen v. Kuehling*, 213 Ill. 2d 329, 335 (2004). The question of whether a duty is owed is a question of law to be determined by the court. *Thompson*, 241 Ill. 2d at 438-39.

¶ 38    In Illinois, it is well settled that a landlord is not liable for injuries caused by a defective or dangerous condition on premises that the landlord leases to a tenant and are under the tenant's control. *Gilley v. Kiddel*, 372 Ill. App. 3d 271, 275 (2007) (citing *Klitzka v. Hellios*, 348 Ill. App. 3d 594, 597 (2004)). "Therefore, a lessor who relinquishes control of property to a lessee owes no duty to a third party who is injured while on the leased property." (Internal quotation marks omitted.) *Id.* This premise, which is commonly referred to as "lessor immunity," is not absolute, and a landlord may be liable if any of the following exceptions apply: (1) a latent defect exists at the time of the leasing that the landlord should know about; (2) the landlord fraudulently conceals a dangerous condition; (3) the defect causing the harm amounts to a nuisance; (4) the landlord has contracted by a covenant in the lease to keep the premises in repair; (5) the landlord violates a statutory requirement of which a tenant is in the class designated to be protected by such requirement; or (6) the landlord voluntarily undertakes to render a service. *Id.* (quoting *Klitzka*, 348 Ill. App 3d at 598, and citing *Wright v. Mr. Quick, Inc.*, 109 Ill. 2d 236, 239 (1985)).

¶ 39    Here, plaintiff maintains that Laurence Chicago Ventures, LLC, contractually agreed to retain responsibility for structural elements of the building, and, accordingly, it owed a duty to him because the orchestra pit is such a structure. The language upon which plaintiff relies is the lease provision which states that any alteration that affects the structure of the premises shall only be made with the prior written consent of Laurence Chicago Ventures, LLC. There is no implied duty on a landlord to make repairs where the lease provision merely states that the lessee cannot make certain changes without obtaining the lessor's consent. *Id.* at 276; see also *Yacoub v. Chicago Park District*, 248 Ill. App. 3d 958, 961 (1993) (holding that lessor's contractual right to approve any improvements made by lessee does not create a duty on the part of the lessor). Plaintiff does not dispute that Laurence Chicago Ventures, LLC, is the landlord under the lease, and he points to no other potentially applicable exclusion to lessor immunity. We thus find that lessor immunity applies to Laurence Chicago Ventures, LLC, and that summary judgment in its favor was appropriate given that it owed no duty to plaintiff.

¶ 40                              Laurence Chicago, LLC

¶ 41    Laurence Chicago, LLC, argues that it is also entitled to lessor immunity because its license agreement with Broadway in Chicago actually constitutes a lease in that it includes the essential elements of a lease, and Broadway in Chicago was in exclusive possession of the Oriental Theatre. Plaintiff responds that the agreement expressly states that it is a license, not a lease, and thus it cannot be construed as a lease.

¶ 42    Laurence Chicago, LLC, cites to numerous cases in support of its argument that the title of a document does not dictate whether it is a license or a lease, and one must look to whether the document has the elements of a lease in reaching that determination. However, we find that we need not determine whether the license between Laurence Chicago, LLC, and Broadway in Chicago can be construed as a lease. As the circuit court noted, in this case we are dealing with contractual provisions, and thus any duty to be imposed will be based on the language of the contract. Additionally, a contractual covenant is one of the exclusions to lessor immunity, and, here, Laurence Chicago, LLC, contracted to remain responsible for the repair and replacement of the "building structure." Thus, even if we were to find that the license agreement was actually a lease, we would still need to determine whether the contractual covenant exclusion is applicable. Accordingly, we direct our analysis to whether a duty was imposed upon Laurence Chicago, LLC, based upon the contractual language; which language is applicable regardless of whether the agreement is deemed to be a license or a lease.

¶ 43    Pursuant to the terms of the license, Laurence Chicago, LLC, agreed to remain responsible for the "repair" and "replacement," but not routine maintenance, of the "building structure." The circuit court found, and defendants have conceded, that the orchestra pit was a structural element of the building. However, in his amended complaint, plaintiff made no allegation that the orchestra pit was in disrepair, or that any part of the orchestra pit was in need of replacement. Rather, his allegations centered on the lack of a cover or barricade on the orchestra pit. In announcing its decision, the circuit court found that the orchestra pit net was not a part of the building's structure because it was portable, and thus defendants did not owe a contractual duty to plaintiff in relation thereto. We agree with this determination. However, even if we were to find that the orchestra pit net was a part of the building's structure, plaintiff made no allegation in his amended complaint that the net itself was in disrepair or in need of replacement. Further, the deposition testimony of Yuen and Bizer reflects that the orchestra pit net was on site and available for use at the theater on the date of the accident and that Yuen, a Broadway in Chicago employee, was in charge of deciding whether the net would be in use on any given day. Laurence Chicago, LLC's, contractual duty was limited to the repair or replacement of structural aspects of the building. Given that plaintiff failed to allege that any part of the building's structure which was involved in his accident was in need of repair or replacement, we find that he failed to establish a contractually based duty on the part of Laurence Chicago, LLC.

¶ 44    Plaintiff, however, also maintains that Laurence Chicago, LLC, owed him a duty under the theory of premises liability, citing *Choate v. Indiana Harbor Belt R.R. Co.*, 2012 IL 112948, ¶ 24, which stands for the proposition that an owner or occupier of land owes a duty of reasonable care under the circumstances to all entrants to the premises, aside from trespassers. Plaintiff also relies upon section 343 of the Restatement (Second) of Torts (Restatement (Second) of Torts § 343 (1965)), pursuant to which a "possessor" of land is subject to liability for physical harm that is caused to his invitees under certain conditions. In *Choate*, the defendants either owned or managed the day-to-day operations of the railroad tracks where the plaintiff sustained injuries, and thus their ownership and occupation of the premises was not in dispute. *Choate*, 2012 IL 112948, ¶¶ 4, 24-25. Here, in contrast, Laurence Chicago, LLC, is not the owner of the Oriental Theatre. Further, as discussed

below, the testimony contained in the discovery depositions reflects that Laurence Chicago, LLC, was not an occupier or possessor of the theater at the time of the accident.

¶ 45 Our decision in *Madden v. F.H. Paschen/S.N. Nielson, Inc.*, 395 Ill. App. 3d 362 (2009), is instructive on the question of whether Laurence Chicago, LLC, was an occupier or possessor of the theater. In *Madden*, a school maintenance worker sustained injuries when he fell from the school's theater stage into an uncovered orchestra pit. *Id.* at 364-65. Plaintiff filed a negligence action against the general contractor, construction manager, architect, and design consultant who were involved in the construction process of the theater. *Id.* at 365. The circuit court granted summary judgment in favor of all of the defendants except for the architect, finding that a question of fact existed as to whether the architect could be held liable for negligent design code violations. *Id.* at 365, 373. The plaintiff appealed the trial court's grant of summary judgment in favor of two of the other three defendants, and this court affirmed that judgment. *Id.* at 365. In doing so, this court noted that a prerequisite to liability under section 343 is that the defendant be a "possessor" of land, and that the restatement defines a possessor as " 'a person who is in occupation of the land with intent to control it.' " *Id.* at 375 (quoting Restatement (Second) of Torts § 328E, at 170 (1965), and Restatement (Second) of Torts § 343, at 215-16 (1965)). This court reasoned that the emphasis on control is in keeping with the reason behind imposing premises liability, namely, that the person in possession of property is ordinarily in the best position to discover and control its dangers, and often is responsible for creating them in the first place. *Id.* (quoting Prosser and Keeton on the Law of Torts § 57, at 386 (W. Page Keeton *et al.* eds.5th ed. 1984)). With those principles in mind, this court found that the defendants did not occupy the premises with the intent to control it at the time of the accident, given that they had no contractual authority to direct events on the premises and the school was the entity in active possession and control of the theater at that time. *Id.* at 376. This court reasoned that at the time of the accident, the school was in the process of preparing the theater for a school program, and that there was no evidence in the record that either of the two defendants had any hand in those preparations. *Id.*

¶ 46 Here, as in *Madden*, the theater in question was in the process of being prepared for a program. Pursuant to the terms of the license, Broadway in Chicago was responsible for producing, promoting and presenting stage productions. The record shows that plaintiff's accident occurred after he and his fellow stagehands had completed the loading out process of the *Addams Family* show and were in the process of restoring the theater to its original condition in preparation for the next show that would be presented at the theater. As in *Madden*, there is no evidence in the record that Laurence Chicago, LLC, had any hand in those preparations. Raizin, Bizer, and Burkett testified that Broadway in Chicago was in charge of the day-to-day operations of the theater and that Laurence Chicago, LLC, was not involved in those operations in any way. Plaintiff testified that no one from Laurence Chicago, LLC, ever directed him on how to do his job, and Yuen, plaintiff's supervisor, testified that he had never even heard of Laurence Chicago, LLC. Thus, as in *Madden*, we find that Laurence Chicago, LLC, did not occupy the premises with intent to control it, and thus did not owe a duty to plaintiff under section 343. *Id.*

¶ 47 In sum, we find that Laurence Chicago Ventures, LLC, and Laurence Chicago, LLC, did not owe a duty to plaintiff. Accordingly, we need not reach plaintiff's argument relating to

the elements of duty of care and whether a question of fact exists in relation thereto.

¶ 48                                    CONCLUSION

¶ 49        For the foregoing reasons, we affirm the judgment of the circuit court of Cook County granting summary judgment in favor of all four defendants.

¶ 50        Affirmed.