2026 IL App (2d) 250128-U
No. 2-25-0128
Order filed January 26, 2026

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| ASHLYN LUCCHETTI and BRYAN STARR, Individually and Next Friends of BRAYDEN STARR, a Minor, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| | ) | |
| Plaintiffs-Appellants, | ) | |
| | ) | |
| v. | ) | No. 22-LA-212 |
| | ) | |
| ALLISON HALL and STACY WAGNER, | ) | |
| | ) | |
| Defendants | ) ) | Honorable Mark A. Pheanis, |
| (Allison Hall, Defendant-Appellee). | ) | Judge, Presiding. |

PRESIDING JUSTICE KENNEDY delivered the judgment of the court.
Justices Jorgensen and Mullen concurred in the judgment.

**ORDER**

¶ 1    *Held*:   In suit against landlord on whose premises a tenant's dog bit an invitee, summary judgment for the landlord was proper (1) on the claim under the Animal Control Act, because there was no evidence that the landlord exercised care, custody, and control of the dog, and (2) on the common-law negligence claim, because the landlord did not retain control over the area where the injury occurred.

¶ 2    Plaintiffs, Ashlyn Lucchetti and Bryan Starr, individually and as next friends of their son,

Brayden Starr (Brayden), filed an amended complaint against defendants, Allison Hall and Stacy

Wagner, seeking recovery for injuries inflicted on Lucchetti and Brayden by Wagner's dog, a pit

bull named Maximus. The amended complaint included claims based on common-law negligence generally and, more specifically, negligence based on a theory of premises liability. In addition, the amended complaint sought recovery under section 16 of the Animal Control Act (Act) (510 ILCS 5/16 (West 2020)). The trial court entered a default judgment against Wagner but, on cross-motions for summary judgment between defendant Hall and plaintiffs, entered summary judgment in favor of Hall. On appeal, plaintiffs argue that the entry of summary judgment for Hall was error. We affirm.

¶ 3                                                  I. BACKGROUND

¶ 4        Plaintiffs and Hall attached copies of Lucchetti's and Hall's discovery depositions to their respective motions for summary judgment.  Lucchetti testified at her deposition that she had known Wagner "since I was 15 years old" and knew Wagner had owned Maximus for two or three years prior to the May 12, 2022, incident in which the dog bit her and her son. Lucchetti testified that she had never been around the dog before Wagner moved into the basement of Hall's two-story townhouse in 2021. Prior to Wagner moving there, Lucchetti "asked him if the dog had ever attacked before," to which Wagner said "never." At no time before the incident in question did anyone notify Lucchetti of any aggressive behavior by Maximus, although Lucchetti observed the dog "licking aggressively," which was "the most aggressive I saw the dog."

¶ 5        Lucchetti became acquainted with Hall five months before the incident. Lucchetti met Hall through Wagner, who was renting the lower level of Hall's two-story townhouse. Lucchetti's children became friends with Hall's daughter, so Lucchetti would sometimes have Hall's daughter over and drop her off at Hall's home. Lucchetti made more than 10 social visits to the townhouse and saw Hall on most of those occasions. Luchetti testified that Maximus was kept on the basement level and she saw Hall take Maximus for a walk "two, three, not a lot of times" while Wagner was

recuperating from surgery in February and March 2022. On five or six other occasions, Luchetti said she saw Hall let the dog outside through the townhouse's garage (which was adjacent to the lower level). She said Hall did not take him for a walk but there were bushes outside "so he had easy access to go to the bathroom right there." Only one of these instances was when Wagner was not home.

¶ 6     On the afternoon of May 12, 2022, Lucchetti and her children—Brayden and Jackson—visited Wagner. Hall was not home, nor was Hall's daughter. Lucchetti waited for Hall's daughter to come home so that the children could play. Lucchetti brought snacks and water balloons for the children. As Lucchetti filled the water balloons in the lower-level bathroom, Maximus walked back and forth between the garage and the lower level. Wagner was sitting at a table in the garage. At some point while filling the balloons, Lucchetti noticed a puddle of water on the bathroom floor. As she began walking out of the bathroom to notify Wagner, she slipped in the puddle and fell. Brayden ran to help her. At that point, Maximus ran toward Brayden and latched onto Brayden's arm. It took "[m]inutes" to free Brayden's arm from Maximus's jaws. The dog then attacked Lucchetti, biting her fingers and neck. Maximus also attacked Wagner. Lucchetti ran out through the garage and called 911. The police arrived and shot and killed the dog.

¶ 7     Hall testified at her deposition that she rented the lower level of her townhouse to Wagner starting in August 2021. They did not execute a written lease until after the incident. Wagner's dog, Maximus, lived with him from August 2021 until the May 2022 incident. Hall lived on the upper level of the townhouse with her daughter and two cats, and Wagner lived on the lower level with Maximus. Hall testified that the "downstairs bedroom, the downstairs bathroom, and the downstairs living room were all [Wagner's] apartment." The townhouse's main entrance opened onto a foyer, which had one set of stairs to each level. The only interior access to the townhouse's

garage was through the lower level and Hall would have to walk through part of Wagner's apartment to get from the garage to the stairs to her space on the upper floor.

¶ 8     Maximus was confined to the lower level by a "locking baby gate" at the bottom of the stairs to the lower level. Asked why she purchased and installed the gate, Hall answered, "I have two cats, and I have a young daughter, and I'm not particularly a dog person. I also work from home and didn't want [Maximus] to have free rein of the house." She stated that the "sole purpose" of installing the gate was to keep the dog downstairs in Wagner's "apartment." Before the incident, she "never witnessed him doing anything aggressive" and did not regard Maximus as a danger, but rather as "more of a nuisance." Before Wagner moved in, he told Hall about an incident in which Maximus became aggressive toward Wagner's former roommates after their argument "became physical." Hall said that Wagner told her he was injured when he tried to intervene. Hall believed this occurred "probably a couple of years" before the May 2022 incident and that her understanding was that the dog became aggressive only because of the roommates' "physical aggression."

¶ 9     Hall testified that her interactions with Maximus were "just co-existing." She encountered the dog when visiting Wagner or when going to or from the garage, and walked him only once, while Wagner was recovering from surgery. She never fed Maximus, filled his water bowl, let him out to go to the bathroom, or played with him. She did not "provide any financial support to Maximus such as buying him food, buying him treats or paying for any veterinary service." On May 12, 2022, Hall was away from the townhouse and had not been told beforehand that Luchetti or her children were going to be there.

¶ 10    After the trial court granted summary judgment for Hall, plaintiffs filed this timely appeal.

¶ 11                              II. ANALYSIS

¶ 12    Plaintiffs argue that the trial court erred by entering summary judgment for Hall.

"A grant of summary judgment is appropriate where the pleadings, depositions, admissions, and affidavits on file, when viewed in the light most favorable to the nonmoving party, show that there is no genuine issue as to any material fact and the moving party is clearly entitled to a judgment as a matter of law." *Andrews v. Carbon on 26th*, LLC, 2025 IL 130862, ¶ 20; 735 ILCS 735 ILCS 5/2-1005 (West 2022).

We review *de novo* an order granting summary judgment. See *Andrews*, 2025 IL 130862, ¶ 20.

¶ 13    Plaintiffs sought recovery based on section 16 of the Act. Their complaint also included two counts against each defendant sounding in common law negligence (one of which was based on principles of premises liability).

¶ 14    We first consider whether the trial court erred entering summary judgment for Hall on plaintiffs' claim under section 16 of the Act. The issue on appeal here requires us to interpret the Act's language. "When construing a statute, our primary objective is to ascertain and give effect to the legislature's intent." *Rosenbach v. Six Flags Entertainment Corp.*, 2019 IL 123186, ¶ 24. "That intent is best determined from the plain and ordinary meaning of the language used in the statute." *Id.*

¶ 15    Section 16 of the Act (510 ILCS 5/16 (West 2020)) provides:

"If a dog or other animal, without provocation, attacks, attempts to attack, or injures any person who is peaceably conducting himself or herself in any place where he or she may lawfully be, the owner of such dog or other animal is liable in civil damages to such person for the full amount of the injury proximately caused thereby."

¶ 16 Under section 2.16 of the Act (*id.* § 2.16), " '[o]wner' means any person having a right of property in an animal, or who keeps or harbors an animal, or who has it in his care, or acts as its custodian, or who knowingly permits a dog to remain on any premises occupied by him or her."

¶ 17 Plaintiffs do not contend that Hall had any property interest in Maximus. Instead, plaintiffs argue that the summary judgment record contains evidence that Hall qualified as the dog's "owner" because (1) she "knowingly permitted Maximus to remain on her premises" and (2) she "kept and harbored" Maximus by installing a gate to control his movements, occasionally walking him, letting him outside, and "otherwise 'coexist[ing]' " with him.

¶ 18 Although plaintiffs argue that Hall permitted Maximus to remain on "her premises," the pertinent inquiry under section 2.16's definition of "owner" is whether Hall permitted the dog "to remain on any premises *occupied* by *** her." (Emphasis added.) *Id.* It is undisputed that Maximus was confined to premises that Hall rented to Wagner. Even though Hall permitted Wagner to keep Maximus on the rented premises, Hall would not fit the definition of owner unless she herself "occupied" those premises. Since "occupied" is not defined in the Act, we may consult the dictionary to ascertain the term's plain and ordinary meaning. See *Rosenbach*, 2019 IL 123186, ¶ 32. "Occupy" is defined as follows:

> "*vb.* 1. To seize or take possession of; esp., to enter and take control of (a place) <the Iraqis briefly occupied Kuwait>. 2. To take up the extent, space, room, or time of <the company's headquarters occupy 20 acres>. 3. To hold possession of; to be in actual possession of <Queen Elizabeth II occupies the throne>. 4. To employ; to possess or use the time or capacity of <the computer industry occupies millions of workers>. 5. To use (money) in commerce; to invest; to employ for profit <to occupy $10 million in the

venture>. 6. To live or stay in (a place) <he occupies the apartment without paying rent>."

*Occupy*, Black's Law Dictionary (12th ed., 2024).

Only the last definition—"To live or stay in (a place)"—applies in the context of the Act's definition of owner, and it is abundantly clear that Hall did not occupy the townhouse's lower level, which she rented to Wagner and where Maximus was confined. Although Hall accessed the garage through the lower level and sometimes visited Wagner there, she neither "lived" or "stayed" on the lower level.

¶ 19 We next consider whether there is a genuine issue of material fact as to whether Hall "kept" and/or "harbored" Maximus. It has been held that:

" 'The verb "[h]arbor" means "[t]o afford lodging to, to shelter, or to give a refuge to.' [Citation.] Black's Law Dictionary defines "[k]eeper of dog" as: "A harborer of a dog. [Citation.] Any person, other than owner, harboring or having in his possession any dog. [Citation.] One who, either with or without owner's permission, undertakes to manage, control, or care for it as dog owners in general are accustomed to do." [Citations.]" ' [Citation.]" *Whitten v. Luck*, 2014 IL App (5th) 120513, ¶ 9

¶ 20 Both "harboring" and "keeping" an animal "involves some measure of care, custody, or control." *Id.* ¶ 10. Moreover, to hold a person liable under the Act on the basis that he or she is an animal's "keeper," the injured party must show " 'that the person had control over the animal at the time of the injury or immediately prior to the injury.' " *Id.* (quoting *Frost v. Robave, Inc.*, 296 Ill. App. 3d 528, 532 (1998).

¶ 21 The only theory of "control" plaintiffs advance that might apply at the time of, or immediately before, the injury is based on Hall's installation of the gate to confine Maximus to the lower level of the townhouse. However, accepting this theory of control to determine whether

Hall was Maximus's keeper would violate the principle that "statutes must be construed to avoid absurd results" (*Dawkins v. Fitness International, LLC*, 2022 IL 127561, ¶ 27).

¶ 22     There is no dispute that Hall installed the gate to keep the dog out of the areas of the townhouse that Hall occupied. However, doing so was fundamentally no different than a homeowner building a fence to keep neighbors' pets and stray animals off the homeowner's property. It would be absurd to hold that, by doing so, the homeowner became the owner of those pets and stray animals. It would be equally absurd to hold that Hall's measures to keep Maximus out of Hall's portion of the townhouse made her his owner. In fact, putting up the gate was compelling evidence that Hall was *not* Maximus's owner, because it showed that Maximus was not permitted even to enter, let alone "remain," on the premises occupied by Hall.

¶ 23     Because the summary judgment record contains no evidence that Hall had control over Maximus at the time of, or immediately before, the injury, we conclude that she was not the dog's keeper. Similarly, the summary judgment record contains no evidence that Hall harbored Maximus. She did not afford lodging to, shelter, or give refuge to him.  Moreover, "[h]arboring is limited to situations where an individual provides food and shelter of at least a semipermanent nature." *Whitten*, 2014 IL App (5th) 120513, ¶ 10. Regardless of whether Wagner's tenancy might be regarded as semi-permanent when the incident occurred, Hall neither purchased food nor put it out for Maximus. See *Howle v. Aqua Illinois, Inc.*, 2012 IL App (4th) 120207, ¶ 50 ("[A] landlord-tenant relationship, without more, is insufficient to establish ownership under the Act.") There was conflicting deposition testimony about the number of times Hall walked Maximus, but it was three times at most.  Viewing the evidence in the light most favorable to plaintiffs (as nonmovants) that level of interaction is plainly insufficient to establish that Hall harbored the dog. Accordingly, the trial court properly entered summary judgment on plaintiffs' claim under section 16 of the Act.

¶ 24    We next consider whether plaintiffs' common-law negligence claims against Hall should have survived Hall's motion for summary judgment. In order to prevail on a common-law negligence claim, "the plaintiff must provide sufficient facts showing the existence of a duty owed by the defendant, a breach of that duty, and an injury proximately resulting from the breach." *Klitzka ex rel. Teutonico v. Hellios*, 348 Ill. App. 3d 594, 596 (2004). "Where the plaintiff fails to provide facts from which the court could infer the existence of a duty, summary judgment for the defendant is appropriate." (Internal quotation marks omitted.) *Id.*

¶ 25    Plaintiffs argue that Hall was liable as the dog's "owner," a characterization based on the same arguments we have just rejected in our analysis of plaintiffs' claim under the Act. Invoking principles of premises liability, plaintiffs also argue that Hall owed Lucchetti and  Brayden a duty as "invitees" onto her property When Wagner's dog attacked them, they were invitees of Wagner on premises that Wagner leased from Hall. "[A] landlord owes no duty to a tenant's invitee to prevent injuries proximately caused by an animal kept by the tenant on the leased premises if the landlord does not retain control over the area where the injury occurred." *Id.* at 601. As we explained in discussing the claim under the Act, Hall had not retained control over the lower level of the townhome when the injury occurred.

¶ 26                                III. CONCLUSION

¶ 27    For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 28    Affirmed.